ELISHAMA BEATY

*v.*

J. C. HOOD.

*Opinion filed October 23, 1907.*

1. DEEDS—*partial impairment of grantor's mental faculties does not vitiate deed.* To justify setting aside a deed upon the ground that the grantor was weak-minded, the proof must show that he was so mentally unsound as to be incapable of understanding the nature and effect of the transaction and of protecting his own interests; and it is not sufficient to show that he was not a good judge of land values nor capable of making discreet trades.

2. SAME—*rule as to capacity to make deed is broader than that applicable to wills.* While mental capacity to make a deed is not established by mere proof that the grantor possessed sufficient mental capacity to know and understand the transaction in which he was engaged,—that is, the execution of the deed,—yet it is not essential to the validity of his deed that he have sufficient capacity to make discreet trades in the matter of sale or exchange of lands.

3. EVIDENCE—*complainant must establish bill by preponderance of evidence.* One seeking to set aside his deed upon the ground of false representations and undue influence by the grantee has the burden of proving the allegations of his bill by a preponderance of the evidence, and if the testimony is conflicting and heard in open court the chancellor's findings as to the facts must be upheld, on appeal, unless clearly wrong.

WRIT OF ERROR to the Circuit Court of Richland county; the Hon. P. A. PEARCE, Judge, presiding.

H. G. MORRIS, for plaintiff in error.

JOHN LYNCH and J. S. C. NICHOLS, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was begun by Elishama Beaty filing a bill in the circuit court of Richland county to set aside a deed made by him to defendant in error. Shortly after the suit was instituted the county court of said Richland county, in a proceeding instituted in that court for that purpose, appointed R. S. Hanna conservator of said Beaty, and by leave of the circuit court the conservator was made a party complainant before the cause was heard. The bill alleged that Beaty, (whom we shall hereafter refer to as plaintiff in error,) in January, 1906, owned eighty acres of land in Richland county worth from $4000 to $5000, which was encumbered by a mortgage of $1500; that defendant in error told him he owned one hundred and twenty-five acres of land in the Wabash bottom, in Gallatin county, Illinois, for which he had paid $3600; that it was encumbered by a mortgage of $600, and he desired to exchange said land

with plaintiff in error for his farm in Richland county. The bill charges the defendant in error with falsely representing himself to be the owner of the land, with false representations as to its value, and with obtaining an undue influence over plaintiff in error on account of his weak and distracted condition of mind and by reason of the fact that they were both members of the Masonic order, and thereby inducing plaintiff in error to execute the conveyance. Upon a replication and answer being filed, the cause was heard on oral proofs in open court and a decree entered dismissing the bill. Complainant below has brought the case to this court by writ of error.

Both parties lived, at the time the exchange was made, in the village of Noble, Richland county, Illinois, and the eighty-acre farm of plaintiff in error was near by. Defendant in error was a merchant. The trade between the parties was first talked of prior to February 1, 1906, and on that day the parties went to Gallatin county and examined the land defendant in error is alleged to have claimed to own and proposed to trade to the plaintiff in error. As a matter of fact, defendant in error had no title to the land at that time but it then belonged to a man named Parkinson, who lived in Mt. Carmel, Illinois. Defendant in error obtained a deed from Parkinson for the land February 15, 1906. The consideration expressed in the deed was $3600, but the actual amount paid by the defendant in error for the land was $1200. On the 9th of March, 1906, and before the trade with plaintiff in error, defendant in error placed a mortgage upon the land to one Mary Ledford to secure the payment of $1000. The trade proposed by defendant in error was, that he would give his Gallatin county land, subject to the encumbrance, for plaintiff's eighty-acre farm, subject to the encumbrance on it, which, with accumulated interest, amounted to $1600. He afterwards added $100 to this offer and the exchange was made upon that basis. The deed from himself and wife to plaintiff in error bears

date March 16, 1906. Plaintiff in error and his wife were
living separate and apart, and the deed from them to de-
fendant in error bears date February 14, 1906, and was
acknowledged by Mrs. Beaty at Rock Island on that day.
The acknowledgment of plaintiff in error is dated April 12,
1906, and was taken before R. S. Hanna, notary public,
now the conservator of Elishama Beaty. The bill in this
case was filed April 7, 1906, and the conservator appointed
by the county court May 16, following.

E. C. Donaldson testified he lived in Ridgeway, Gallatin
county, on the first day of February, 1906, and on that day
met the parties to this suit at the train and the following
day drove them out to see the Gallatin county land; that
before they started to see the land defendant in error asked
him if he was well enough acquainted with the land to show
it up to the best advantage; that he told him he was, and
said he did do so. He testified that on the way out to the
land the parties would ask him what land they passed was
worth; that he replied $75 per acre, and defendant in error
seemed to be telling plaintiff in error what a bargain he was
getting, considering the price he was paying and the price
of land near by. He testified defendant in error represented
to the plaintiff in error that he had bought the land, and
thought he said the price paid for it was $3500; that de-
fendant in error bragged about the amount of corn raised
on the land ten years ago, and said if properly tended it
would produce sixty to eighty bushels per acre. He testi-
fied they were on the land about half an hour, and that at
the hotel, before they started out to the land, defendant in
error told him he did not want anyone who knew the land
to see plaintiff in error; that plaintiff in error had a farm
at Noble that he wanted to beat him out of.; that in the
evening, after they returned to the hotel, he (witness) told
defendant in error he thought the land belonged to a man
in Mt. Carmel and asked him whether he had bought it;
that defendant in error said: "I see you are an Odd Fel-

low; I being one, we are talking through the links; I do not want you to tell anyone here I have not bought this land; I am in a position to get it if I make the deal with this man." The same witness testified the land that had been cleared,—about eighty acres,—was mostly grown up in brush and weeds, and that the year previous only about five or six acres had been in corn and had produced fifteen or sixteen bushels per acre. He testified it was old, worn-out land, soil thin and subject to overflow; that for farming purposes he did not consider it of any value but as a trading proposition it might be worth $5 or $6 per acre.

Parkinson, from whom defendant in error bought the land, testified he had owned it about ten years, and that in 1896 or 1897 he got one hundred and fifty bushels of corn that was raised on it, but did not know whether it had been cultivated after that time.

T. A. Boone, son-in-law of plaintiff in error, testified he was a farmer, and after the trade between the parties, at the request of plaintiff in error he went to see defendant in error, and told him his father-in-law was dissatisfied and claimed he had been swindled out of $2600; that defendant in error said he could trade plaintiff in error three hundred and twenty acres of land in Nebraska for the land, and that there was a man in Louisville, Illinois, who would give $2600 for it, subject to the mortgage, and that defendant in error said one acre of the Gallatin county land would produce twice as much as an acre of the Richland county land.

R. S. Hanna, the conservator, testified that after his appointment he went to Gallatin county and examined the land, and after describing its soil, condition and appearance, gave it as his opinion that as farm land it was worth nothing.

George Moye testified he lived eight miles from Ridgeway; was a farmer and acquainted with the Gallatin county land. He described it as badly worn out, subject to overflow and unproductive. He gave it as his judgment that for farming purposes it was not worth over $5 or $6 per acre.

On the question of mental capacity of plaintiff in error, Dr. Palmer, his family physician, testified he had known him several years and was acquainted with his mental condition about the time the deed was made; that he considered his business judgment bad as to values in making trades; that he did not think he had any conception of trading values; that he .was capable of transacting ordinary affairs of life, such as buying and selling property, but that in all the trades he knew of him making, plaintiff in error lost; that he was rational enough so far as laboring and coming and going was concerned, but was erratic, irritable and changeable in his views and ideas of values; that he understood how to manage and conduct his farm and raise crops, but the witness did not think his mental capacity good in buying and selling. The witness further testified that these conditions had existed about fifteen years, during which time plaintiff in error managed and conducted his business of farming, buying and selling stock, and had sufficient capacity to know the effect of his act when he signed the deed and comprehended the effect of a conveyance to him, and that as to the condition of land and soil he thought the judgment of plaintiff in error normal.

C. E. Palmer, a merchant residing in Noble, testified he had known plaintiff in error ever since he had lived in the county; that during the last two years plaintiff in error had lived in Noble and witness had seen him very often. In answer to the question by counsel for plaintiff in error, "You may state whether you believe that the complainant, E. Beaty, is capable of understanding and acting with discretion in the ordinary affairs of life," the witness answered: "Mr. Beaty, as a farmer, is one of the best I ever knew. He cultivated his farm well, raised good crops and took care of his orchard. On that farm is one of the best orchards in our neighborhood. He cleared his land, placed it in a high state of cultivation, and so far as his work on the farm is concerned, his superior, perhaps, was not in that neighbor-

hood. He was a farmer par excellence, but when you take him away from his farm, get him out to trading,—when he comes in contact with keen, shrewd men,—Mr. Beaty is a child. He is nothing more and nothing less, in my opinion. He does his work well and his farm showed it. He built his farm out of raw material, but aside from that he is not capable of meeting men who are traders and business men,—men who are trained and skilled in that line." The witness further testified that while plaintiff in error was a first-class farmer he regarded his judgment as to trading poor, but that he had sufficient mental capacity to know what he was doing when he executed a deed and to know when he made a deed to his farm that it was gone from him, but he did not think his mental capacity and judgment sufficient to comprehend whether he was making a good trade or a bad one. On cross-examination the witness testified that what he meant was, that plaintiff in error had not sufficient judgment to cope with other traders. He further testified plaintiff in error knew how to raise good crops, build up and make his farm a fine one, sell his crops and buy and sell stock.

Marion Martin testified that he was a farmer, living in Noble, and knew plaintiff in error sixteen years; that in his opinion plaintiff in error had sufficient mental capacity on February 16, 1906, to know what he was doing when he made a deed.

Plaintiff in error, himself, was sworn and testified in the case. His testimony is too voluminous to even set out in substance, but his relation of the negotiations between himself and defendant in error before the trade was consummated and of his visit to and examination of the land tended to show that his mind and memory as to those matters were reasonably clear. He testified defendant in error pledged him, as a Mason, to secrecy pending the negotiations, and that he relied upon defendant in error and the representations made by him by reason of their being brother Masons

and members of the same lodge. He further testified he had no recollection of signing the deed to defendant in error.

On behalf of defendant in error A. A. Shannon testified he had known plaintiff in error seven years; that he had traded with him for stock at different times for three or four years and considered his mental capacity as good as the average; that at one time he entered into a written contract with him concerning a business matter and plaintiff in error drew it up himself.

J. O. Henry testified he lived in Noble, was a stock dealer and had bought most of plaintiff in error's stock; that plaintiff in error knew how to figure prices and was capable of understanding and transacting the ordinary affairs of life.

M. L. Taylor testified he had known plaintiff in error fifteen or twenty years and lived about two miles from him; that he considered plaintiff in error a little above the average man in education and capable of understanding and transacting the ordinary business of life; that he attended to his own business and witness had traded and dealt with him at different times. Witness further testified plaintiff in error staid all night at witness' house after he had traded for the Gallatin county land and left the next day for Oklahoma; that he said he was going there to trade the Gallatin county land for western land. The witness testified this was after plaintiff in error had been to see the Gallatin county land the second time, and that he appeared to think it was pretty good land. On cross-examination the witness testified the plaintiff in error had funny ways,—was "cranky,"—but was a man of good education, and he "sized him up as an average man," and that he was always able to take care of himself with witness in a trade.

A. A. Jenkins, postmaster at Noble, testified he had known plaintiff fifteen or sixteen years and that his mental capacity for transacting the ordinary affairs of life was good, though he was considered an eccentric man.

M. C. Donovan testified he had known plaintiff in error intimately seventeen or eighteen years, and during that time thought his mental capacity for transacting the ordinary affairs of life was good, or, as he expressed it, perfect. ·

C. N. Statts testified he had known plaintiff in error twenty years; that he had had some business transactions with him and considered his mental capacity good, and that he was capable of transacting the ordinary affairs of life and of making and understanding the nature and consequences of a deed.

Grant Black testified he had known plaintiff in error eight or nine years; that in January and February, 1906, plaintiff in error hired horses of the witness, and that his mental capacity for understanding and transacting ordinary business at that time was all right. The witness further testified plaintiff in error told him, after the trade had been made, that defendant in error had beaten him out of his land and he was going to have a conservator appointed to see if he could not get his land back.

William Inmann testified he lived in Ridgeway, Gallatin county, and knew plaintiff in error's land; that he helped clear it and had seen good crops raised upon it; that sixty acres of it was black, sandy land but the rest of it was not · quite so good; that part of it had not been cleared; that in February, 1906, the land was worth from $25 to $30 per acre.

Frank Rister testified he lived in Gallatin county and knew plaintiff in error's land there, and that in February, 1906, is was worth $25 or $30 per acre.

Jess Inmann testified he lived in Gallatin county and knew the land in question, and after describing its location and soil gave it as his judgment that it was worth from $25 to $30 per acre.

This was all the testimony offered by defendant in error except that of himself. His testimony was voluminous, and we shall not undertake to set it out in full or all of it in

substance. It is sufficient to say he denied making any false
representations as to the character or value of the land or
attempting in any way to deceive plaintiff in error, by rea-
son of their being brother Masons or otherwise. He denied
telling plaintiff in error he owned the Gallatin county land,
but said he told him he had it to trade on. He further tes-
tified that after he and plaintiff in error had returned from
viewing the land they had a number of talks about the trade,
and finally plaintiff in error insisted on his paying him $100
additional, which he paid and the trade was then consum-
mated.

We have only undertaken to set out the substance of the
most material portions of the evidence. It will be seen that,
so far as the facts involved are concerned, the testimony was
not altogether harmonious. The testimony shows plaintiff
in error was a man of some peculiarities and eccentricities,
but that, alone, would not justify setting aside the deed ex-
ecuted by him. To justify a decree in his favor on that
ground it must be shown that he was so mentally unsound
as to be incapable of understanding the nature and effect of
the transaction and of protecting his own interests. Partial
impairment of the mental faculties of a grantor is not suf-
ficient to authorize the setting aside of a deed made by him,
if at the time of making it he has a full comprehension of
the meaning, design and effect of his act. *Francis* v. *Wil-
kinson,* 147 Ill. 370.

Upon the question of false representations as to the
character and value of the Gallatin county land and of un-
due influence charged in the bill the evidence was conflict-
ing. As to the respective values of the two tracts of land,
it is not disputed that the Richland county farm was worth
from $40 to $50 per acre, and it will be seen from the tes-
timony that the proof on the part of plaintiff in error tended
to show the value of the Gallatin county land to be from
$5 to $6 per acre, while the proof of the defendant in error
tended to show it was worth from $25 to $30 per acre. The

burden was on plaintiff in error to prove the allegations of
his bill by a preponderance of the testimony. It has been
the long established rule of this court that where the evi-
dence is heard in open court, the chancellor, who saw the
witnesses and heard them testify, is better qualified to de-
termine the weight and credit to be given their testimony
than this court, and where, in such cases, the evidence is
conflicting, it will not be disturbed on account of the finding
of the facts by the chancellor, unless it should appear that
such finding is clearly and palpably contrary to the weight
of the evidence. (*Elmstedt* v. *Nicholson,* 186 Ill. 580; *Big-
gerstaff* v. *Biggerstaff,* 180 id. 407.) We are unable to say,
after a careful reading of the testimony in this case, that
the decree entered by the chancellor was clearly and palpably
contrary to the weight of the testimony.

After Dr. Palmer and C. E. Palmer had testified, been
cross-examined and excused from the witness stand, Dr.
Palmer was recalled by plaintiff in error for further exam-
ination. During the progress of this re-examination the
court restricted the inquiry to the question, "Did Mr. Beaty,
at the time he executed the deed to the defendant in this
case, possess sufficient mental capacity to know and under-
stand the transaction in which he was engaged,—that is,
the execution of the deed?"—and this ruling of the court
is assigned as error. We think the rule announced by the
court was too narrow where the question is as to the mental
capacity of a grantor to make a deed. Proof of the mental
capacity to make a deed differs somewhat from proof of
mental capacity necessary to the making of a valid will.
In the case of a will, proof that the testator had sufficient
mind and memory to enable him to know and understand
the transaction he was engaged in when he was making the
will is the test of mental capacity, and not whether he had
sufficient mind and memory to transact ordinary business.
(*Johnson* v. *Farrell,* 215 Ill. 542.) But in *Ring* v. *Lawless,*
190 Ill. 520, it was held that as a sale of property becomes

effective during the life of the vendor and the right of enjoyment and possession passes from him, it becomes important for him to understand and comprehend the value of what he is parting with and what he is receiving in return for it, and to that end he must have mental capacity to form and exercise some judgment as to whether he will be benefited or injured by the transaction. These elements do not enter into the execution of a will. In that case it was said (p. 532): "The test of mental capacity necessary to enable a grantor to make a valid deed is, that he is capable of understanding, in a reasonable manner, the nature and effect of the act in which he is engaged, (citing cases.) That he has such capacity may be shown by proof that he is capable of transacting ordinary business affairs wherein his interest in involved. If he has mental power to comprehend and protect his own interest in such ordinary business affairs, the tribunal to whom the question is submitted may regard him as competent to understand the nature and effect of the act of disposing of his property by deed. If he is lacking in that degree of comprehension, it may well be regarded he is incapable of understanding the nature and effect of the act of disposing of his land to another."

But while the ruling of the court restricted the proof within narrower bounds than should have been done, inasmuch as the witness had previously been permitted to testify fully upon the subject of the grantor's mental capacity to transact or understand ordinary business, we do not see that the ruling prejudiced plaintiff in error. The question which led to the ruling made by the court was, "Do you believe that the complainant in this case, E. Beaty, had sufficient mental capacity and soundness of mind to act with ordinary discretion in the matter of a sale or exchange of lands?" The court properly refused to allow this question to be answered. The fact that a man may make indiscreet trades is not an evidence of want of mental capacity. It is well known that many men of a high order of men-

tal capacity are very indiscreet traders. Counsel for the plaintiff in error did not claim at the time the ruling complained of was made, and does not now claim, that there were any other facts not testified to by the witness in his original examination which he desired to prove, other than an answer to the question propounded. We are unable to see that plaintiff in error was deprived by the ruling of the court of the right to prove any fact competent to be proven, and he was therefore not prejudiced by said ruling.

The decree of the circuit court is affirmed.

*Decree affirmed.*