## WEITZ v. MOULDEN et al.

No. 13266—Opinion Filed Feb. 10, 1925.

**1. Parent and Child—Transactions Between — Fraud — Presumption and Burden of Proof.**

While the relation of a parent and child exists between the parties, this, within itself, is not sufficient to raise a presumption of fraud and undue influence, but when a fiduciary or confidential relation exists between a parent and child, in addition to the family relation, under such circumstances, the burden of proving that the transaction was a fair one is upon the donee.

**2. Gifts—Gift Inter Vivos—Burden of Proof After Donor's Death.**

After the death of an alleged donor, in order to establish a gift inter vivos, the evidence must be clear, explicit and convincing in support of every element necessary to constitute a valid gift.

**3. Deeds—Confidential Relations—Validity of Transaction.**

When confidential relations existing between two persons result in one having an influence over the other, and a business transaction takes place between them resulting in a conveyance to a person holding the influence over him, the law presumes everything against the transaction and leaves the burden of proof upon the person benefited to show that the confidential relation has been as to that transaction suspended, and that it was · as fairly conducted as between strangers.

**4. Appeal and Error — Trial to Court—Erroneous Admission of Evidence.**

A judgment rendered in a case heard without the intervention of a jury will not be reversed on account of the admission of incompetent evidence, unless the record discloses that there was no competent evidence to support it or in some way shows affirmatively that the improper evidence affected the result.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Blaine County; Frank Mathews, Assigned Judge.

Action by Katherine A. Moulden et al. against John P. Weitz et al. for the recovery of an undivided four-fifths' interest in the estate of Philip Weitz, deceased. Judgment for plaintiffs. Defendant John P. Weitz brings error. Affirmed.

J. P. Wishard, for plaintiff in error.

Seymour Foose and R. C. Brown, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Blaine county, Okla., by Katherine A. Moulden, Amelia Wilkinson, August H. Weitz, Mary A. Norcross, George A. Granot, and Frank B. Granot, minors, by their next friend, Mary A. Norcross, defendants in error, plaintiffs below, against John P. Weitz, plaintiff in error, Jacob Meier and the Aetna Life Insurance Company, all defendants below, defendants in error claiming to be the heirs of Philip Weitz, deceased, and entitled to a four-fifths' interest in his estate, which consisted of both real and personal property in the hands of their brother, John P. Weitz, who claimed the same as his own as a gift from Philip Weitz, to set aside a deed to a portion of the real estate, to set aside a mortgage made by John P. Weitz to the Aetna Life Insurance Company, to set aside a deed made to Jacob Meier, for an accounting and an injunction, restraining John P. Weitz from disposing of the property during the pendency of the action, and for an order of court to turn over the funds, belonging to the estate of Philip Weitz in the hands of John P. Weitz, and for costs to the court.

The parties will be referred to as plaintiffs and defendants in this opinion as they appeared in the lower court.

The petition, among other things, alleged that Katherine A. Moulden, Amelia Wilkinson, August H. Weitz, and John P. Weitz were the children of Philip Weitz, deceased, and that Mary A. Norcross, George A. Granot, and Frank B. Granot were his grandchildren, being children of a deceased daughter of Philip Weitz, and that the parties named were the sole and only heirs of Philip Weitz, deceased, and sought to recover their interest in said estate, which amounted to a four-fifths' interest, from John P. Weitz, who, they claim, was in possession of the

real estate and personal property and had collected the rents and profits from the real estate, and was indebted to Philip Weitz, at the time of his death, for money borrowed and rents and money collected, and that the said defendant John P. Weitz had obtained possession of all the estate of Philip Weitz through fraud and undue influence exercised upon his father, and that the said John P. Weitz had obtained a deed to certain of the real estate to be executed in blank by Philip Weitz before his death, and that he had fraudulently inserted his name as grantee therein, and asked that they be declared to be entitled to a four-fifths' undivided interest in all the real and personal property of the estate of Philip Weitz, and that the defendant John P. Weitz be declared to be entitled to the other one-fifth undivided interest therein; that a mortgage for $2,000, given by John P. Weitz upon a portion of the real estate to the Aetna Life Insurance Company should be canceled, and that the deed held by defendant John P. Weitz against certain real estate should be canceled, and that a deed held by Jacob Meier upon certain other real estate should be canceled; that Philip Weitz made and executed a will, but that after the execution of the will he sold and disposed of a portion of the property mentioned in the will, and that the principal devisee in the will, who was his wife, died after the execution of the will and before the death of the said Philip Weitz, and that the act of Philip Weitz in disposing of a portion of the property, devised in the will, in effect, revoked the terms of the will and codicil thereto, and prayed that they have a personal judgment against the defendant John P. Weitz for their four-fifths' interest in the entire estate of Philip Weitz and be decreed a four-fifths' interest in all the assets of the estate of Philip Weitz, in the hands of John P. Weitz; that he be made to account and pay into court all monies had and received by him, belonging to said estate; that the mortgage held by the Aetna Life Insurance Company be canceled and held for naught, but if not canceled, that they have a personal judgment against the defendant, John P. Weitz, for the $2,000 received and used by him as proceeds of said mortgage, together with interest on all funds, and for their costs.

The defendant John P. Weitz answered by way of a general denial, and set up as an independent defense that he was the owner of all the property, belonging to the estate of Philip Weitz, by gift from his father before his death under an agreement that he was to take care of and support his father during his lifetime; that the same was given

to him voluntarily by the said Philip Weitz, and that the said defendant performed all the conditions of said gift on his part; that he admitted that, after the death of his mother, Katy Weitz, his father changed his mind in regard to the will, insofar as the property was concerned, by giving it outright to the defendant, and prayed that the plaintiffs take nothing under their petition, and that the title to the property be quieted in him, and for such other and further relief as the court might find to be proper and just.

The plaintiffs filed reply by way of a general denial and denied that there was any sale or transfer from Philip Weitz to the defendant John P. Weitz of the property described in the petition, and alleged that, if there were any sale or transfer of the property, there was no consideration passed from the defendant to the deceased, and that there was never any delivery of said property, or any part thereof, by the deceased to the defendant; that, if there were any agreement between them for the care and keeping of deceased, during his lifetime, the same was obtained by and through undue influence, used and exercised over the deceased, and by fraud practiced upon the deceased to obtain the property; that the value of deceased's property was between $16,000 and $18,000, and far in excess of all the property owned by defendant, and that the income from said property was more than sufficient to keep and take care of deceased the remainder of his life, he being then 71 years of age; that the deed, claimed to have been executed by deceased to the defendant, was without consideration; that defendant did not take care of the deceased, but that his expenses were paid out of his own funds; and denied that there was ever any gift made by the deceased to the defendant.

Upon these issues the cause was tried to the court, without the intervention of a jury, and, at the close of all the testimony in the case, the court took the same under advisement and found against the plaintiffs in favor of the Aetna Life Insurance Company for the amount of its mortgage and $200 attorney fees, and gave it a lien against the real estate, described in the mortgage, also found against the plaintiffs and in favor of Jacob Meier for the title to the lands conveyed to him, and found that the plaintiffs were entitled to a four-fifths' interest in the estate of Philip Weitz, deceased, awarding Katherine A. Moulden, Amelia Wilkinson and August H. Weitz and the defendant, John P. Weitz, each a one-fifth interest, and Mary A. Norcross, George A. Granot, and Frank B. Granot, the grand-

children, each a one-fifth interest, as the sole and only heirs of Philip Weitz, deceased; that the deceased, on the 16th day of June, 1919, made, executed, and delivered to the defendant, John P. Weitz, in escrow, a deed to lots 15 and 16, in block 8, in the town of Hitchcock, in favor of the plaintiff, August H. Weitz, to be delivered to him after his death; that same had never been delivered and ordered the same delivered to Katherine A. Moulden, as guardian of August H. Weitz, and found that said August H. Weitz was entitled to possession of the property; that the deceased owned, prior to his death, the southwest quarter of section 15, in township 17, north, range 10, west of the Indian Meridian; that he owned $501.97 in cash; a debt due from the defendant John P. Weitz in the sum of $1,100, a debt due from Charles Weitz in the sum of $300, and crops from said real estate in the sum of $209; that he executed a deed to the lands, above described, and left the name of the grantee blank and delivered the same to the defendant and that the name of John P. Weitz was inserted in the deed as grantee and that he gave no consideration therefor, but obtained the same through fraud and undue influence; that the deceased made no gift of the property and never sold the same to the defendant John P. Weitz, and that defendant retained possession of all the property; that the mortgage to the Aetna Life Insurance Company for $2,000 was made by the defendant and he received and used the money therefor, and charged the same against the defendant John P. Weitz; that, on account of the several items, there was due the estate of the deceased from the defendant John P. Weitz the sum of $3,809 in cash, and, after deducting his one-fifth interest, or the sum of $761.80 therefrom, left due the plaintiffs the sum of $3,047.20; that $209 was deposited with the court clerk, which was also to be credited, leaving a balance due from the defendant John P. Weitz to plaintiffs of $2,838.20; that the $1,100 item and the $300 item should draw six per cent. interest per annum from the date of the death of the deceased, to wit, September 9, 1919, and that the said sum of $2,000 received from the mortgage should draw interest at five and one-half per cent. from the last interest-paying date and that a lien be declared against the one-fifth interest of John P. Weitz in and to the southwest quarter of section 15 to secure the payment of the sum of $2,838.20; that the acts of the deceased in relation to his property after the death of his wife operated to revoke the terms of the will and the codicil; that, upon the death of the deceased, the heirs, as

above mentioned, succeeded to and became the owners and entitled to the possession of the said southwest quarter of section 15, as above described, and ordered execution in satisfaction of said judgment.

Motion for new trial was filed, heard, and overruled; exceptions reserved by the defendant, John P. Weitz, and the cause comes regularly upon appeal from said decision by the defendant in favor of the plaintiffs, but the judgment as to the defendants, the Aetna Life Insurance Company and Jacob Meier, is not appealed from and is not made a matter for our consideration on this appeal.

The attorney for defendant contends: First, that the decision of the court was contrary to the evidence and the law, in that there was a failure to show that there was any fraud practiced and an insufficient showing that there was any undue influence used; second, that the court erred in its admission and rejection of certain evidence; and, third, the general assignment that the court erred in not sustaining defendant's motion for new trial.

This being a case of purely equitable cognizance, as presented by the record and as agreed to by attorneys for both parties in their briefs, the rule to be applied here, settled in this jurisdiction by numerous decisions, is that the court, on appeal, before reversing the decision, will weigh the evidence and determine whether or not the judgment of the trial court, sought to be set aside, is clearly against the weight of the evidence. It will, therefore, be necessary to briefly refer to the testimony introduced in this case. The testimony is very conflicting, but it unquestionably shows that the deceased, Philip Weitz, was a foreigner, born, reared and married in Russia, where all of his children were also born; that he could not write the English language; that he was very poor when he came to Oklahoma with his family; that the two plaintiffs, Katherine A. Moulden and Amelia Wilkinson, his daughters, before they were married, worked out and contributed their wages to the support of the family; that, during the later years of the life of Philip Weitz he was afflicted with an incurable disease, from which he finally died under an operation in Oregon; that, in the last year of his life, having lived his allotted time of three score and ten years, as some of his near neighbors testified, he was "feeble in health" and "breaking and short minded," especially following the death of his wife, which occurred a little over one year before his death. The uncontradicted evidence is that the son, the defendant, John P. Weitz, stood in a confidential relation to the deceased and trans-

acted all of his business; that the deceased owned two farms, one of which he sold to Jacob Meier for $7,000; that his son also sold a farm at the same time and the total amount for both farms was $15,000; that there was a mortgage of $2,500 against the farm of John P. Weitz; that the defendant received the entire consideration, which was paid over to him by Jacob Meier and never accounted for by him; that, as to the other farm of deceased, deceased made a deed with the name of the grantee left blank and turned it over to the defendant with instructions to sell it; that the defendant did not sell the farm, but inserted, or had inserted, his own name as grantee, claiming that he was authorized to do this by his father; that the defendant was present during all the business transactions testified about, the making of the deeds and the making and changing of the will and the codicil thereto, and received all the monies, collected debts and rents, borrowed money from the deceased and admitted that he owed him a large sum at the time of his death, but claimed that his father, before leaving for Oregon, made him a present of all his property. The evidence is conflicting on what the deceased said as to what disposition he was going to make of his property to take effect after his death. The depositions of the witnesses from Oregon were to the effect that he said he had given his property to the defendant; that he had already done his part by the other children; and that his mental condition was normal. Some of his friends and neighbors, among whom he lived for many years in Oklahoma, testified that he said he was going to divide his property among all of his children, and the undisputed testimony, other than the statements of the deceased to the Oregon witnesses, is to the effect that he had never given his other children anything, and that they were on friendly terms with their father; that he visited them and they visited him just before he left for Oregon; and the defendant himself finally testified that he did not claim the property under the will, he did not claim that he had paid his father anything for the property, but claimed it as a gift from his father under agreement that he was to take care of and support his father the balance of his life; that after this agreement, the father left for Oregon, having money of his own out of which all of his expenses were paid, and the defendant never contributed anything under this agreement, but on the other hand, got several thousand dollars in cash from the sale of the farm, rents from the farm, and debts collected and owed the deceased at least $1,100; that the deceased's last medical, surgical, hospital, and funeral expenses were paid out of the money that he had at the time of his death. The defendant, after claiming all of the property of his deceased father, finally admitted that his father had placed in escrow a deed to town lots in Hitchcock, in favor of August H. Weitz, a mentally incompetent brother, to be delivered to the brother. When the defendant was called upon to testify as to all the transactions between him and his father, he could not tell when the gift, claimed by him, was made; said no one was present at any time it was talked over between him and his father, and admitted the debt he owed his father, but could not tell how much; admitted he received all the money from the sale of the farm to Jacob Meier, but defendant could not tell how much it was; admitted that he collected the rents, but could not tell how much they were, claimed that he had given his father some money, but could not tell how much, but said that his books would show each and every transaction. The hearing was adjourned, so as to enable the defendant to get his books, and after he had returned he claimed that his books did not show what he claimed they would show and did not bring a single, solitary record of the transactions to this hearing. His testimony showed that he was attempting to evade giving the information sought. He dodged every question that sought to uncover the transactions between him and his father, and it was altogether unsatisfactory, and after reading all of his testimony, we are forced to conclude, as no doubt the trial judge concluded, that it was unworthy of belief.

This is a fair summary of the testimony upon which the trial judge decided this case.

The deeds to the farms and the town property were made sometime in June, 1919, and the deceased left a short time thereafter for Oregon and died there on the 9th day of September, 1919, from a disease he had had for a number of years, and there was sufficient evidence for the trial court to determine by a clear weight of the evidence that the deceased, on account of his age and disease and grief over the loss of his wife, was failing both mentally and physically, and that he was completely under the control and was dominated by his son, the defendant, and while the testimony is conflicting upon the mental condition of the deceased, yet we cannot say that there was not abundant evidence in this case to show that deceased was mentally weakened by grief, age, and disease and that the conclusion arrived at by the court upon the question of undue influence, exercised by the defendant, is not clearly against the weight of the evidence in this case. The testimony

of Ben Smith, county attorney of Blaine county, is to the effect that the defendant, several years before the death of Philip Weitz, came to his office and tried to get him to fix up some papers so that he could get possession of his father's land, which Smith refused to do, showing, at that time, that the defendant was seeking to obtain an advantage over his father and his brothers and sisters and the children of his deceased sister, who were equally with him the natural objects of his father's bounty, and the fact that he had full charge of his father's business, conducted all the transactions, was always there present with his father when his father acted in his business affairs, are controlling facts in this case as to the influence he had over the mind of his foreign-born, aged, and diseased parent. The further fact that when the defendant was called upon to explain this unnatural act on the part of the father by making him the exclusive beneficiary of his bounty and his connection with all the transactions of his father's business, his testimony was unsatisfactory and was not clear, explicit, and convincing, and not such, in our opinion, as would support and establish a gift inter vivos, claimed by him after the death of his father.

This court, in the case of Fouts et al. v. Nance, 55 Okla. 266, 155 Pac. 610, has held that:

"It is the general rule in every jurisdiction that after the death of the donor, in order to establish a gift inter vivos, the evidence must be clear, explicit, and convincing in support of every element needed to constitute a valid gift."

Whatever may be the decisions of other jurisdictions, and the attorney for the defendant cites a long list of them in his brief, the Supreme Court of Oklahoma and the text-writers, in discussing the questions of fraud and undue influence and confidential relation between the parties, hold that each case is governed by the facts and circumstances present in the case under consideration.

While the relation of a parent and child exists between the parties, this, within itself, is not sufficient to raise a presumption of fraud and undue influence, but when a fiduciary or confidential relation exists between a parent and child, in addition to the family relation, the text-writers seem to say that, under such circumstances, the burden of proving that the transaction was a fair one is upon the donee. This principle is supported in 29 Cyc. 1662; 28 C.

J. 653-654; 12 R. C. L. 953; 12 R. C. L. 972-973.

The promise of support of the grantor by the grantee may, in a proper case, furnish a sufficient consideration for a deed, but the execution of the deed, in connection with other circumstances, may constitute such evidence of undue influence as to justify setting it aside, in a case such as this, where the grantor has made no provision for such support. 18 C. J. 238.

In the case of Parker v. Parker et al., 75 Okla. 234, 182 Pac. 697, this court held:

"When a confidential relation exists between a parent and child, and the child is mentally weak, and such confidential relation is such that the parent exercises an influence over the child, and a business transaction takes place between them, resulting in a conveyance to the parent from the child, and the parent is benefited by the transaction, either as a gift, or by reason of an inadequate consideration, the law presumes everything against the transaction; and leaves the burden of proof upon the person benefited, to show that the confidential relation has been as to that transaction suspended, and that the transaction was fairly conducted."

This court decided the case of Parker v. Parker et al., supra, upon two propositions:

"First, is the evidence sufficient to support the judgment of the court?

"Second, after the court found that Clark Parker, deceased, was mentally weak, and that a fiduciary and confidential relation existed between him and his father, then was the burden upon the plaintiff to show that the transaction was fair and an adequate consideration paid for the premises and was without undue influence?"

—and decided both questions in the affirmative. This court announced the same doctrine in the cases of Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756, and Rector v. Bay et al., 91 Okla. 14, 215 Pac. 415.

Then, under the decisions of this court and the authorities cited therein, we are clearly of the opinion that the trial court was right in its judgment, holding that the property claimed by the defendant in this case was obtained from his father by undue influence, and that he had no right to retain the same against his brother and sisters and niece and nephews, the natural and lawful heirs of Philip Weitz, deceased, and that the court correctly found that he was only entitled to an undivided one-fifth interest in the said property, and that he should be held to the payment of the judg-

ment for the money found due from him to the estate less his interest therein.

The attorney for defendant complains of the admission of a certain letter purported to have been written from Oregon by Mrs. Ott for Philip Weitz to Katherine A. Moulden, one of his daughters. Whether or not this letter was admissible, under the strict rules of evidence, upon the ground that it was not properly identified, is not necessary to a decision in this case, as this case was tried to the court without the intervention of a jury and greater latitude is allowed in the admission of evidence in such a case than in a case where a jury is present and where. as in this case, as we hold, there was abundant competent evidence to sustain the findings and judgment of the court and where it clearly appears that justice has been done and that, with the incompetent evidence eliminated, the same result would be reached, the cause will not necessarily be reversed on the ground of admission of incompetent evidence. Heckman v. Jackson, 30 Okla. 693, 120 Pac. 941; Gernert v. Griffin, 28 Okla. 733, 116 Pac. 439.

After a careful examination of the record in this case and of the authorities cited by attorneys for both sides in their very able briefs, we are clearly of the opinion that the decision of the trial court is just and correct and that the same should be and is hereby affirmed.

By the Court: It is so ordered.

Note:—See under (1) 28 C. J. p. 653; 29 Cyc. p. 1662; (2) 28 C. J. p. 681; (3) 18 C. J. p. 422; (4) 4 C. J. p. 982.