## SANDERS v. RHEA et al.

No. 16663—Opinion Filed Sept. 14, 1926.

### 1. Deeds—Cancellation on Ground of Grantor's Weak-Mindedness—Proof.

To justify setting aside a deed upon the ground that the grantor was weak-minded, the proof must show that he was so mentally unsound as to be incapable of understanding the nature and effect of the transaction and of protecting his own interest; and it is not sufficient to show that he was illiterate or eccentric, or that he was not a good judge of land values nor capable of making discreet trades.

### 2. Deeds—Cancellation for Fraud—Proof.

In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence and repel all opposing presumptions. It should be of such weight and cogency as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by P. S. Sanders against Walter P. Rhea and Sallie Rhea to set aside a deed. Judgment for defendants and plaintiff brings error. Affirmed.

Nolen, Crawford & Shaw, for plaintiff in error.

Phillips, Douglass & Duling, for defendants in error.

Opinion by PINKHAM, C. This action was instituted by the plaintiff in error, P. S. Sanders, as plaintiff, against the defendants in error, Walter P. Rhea and Sallie Rhea, as defendants, to set aside a certain purported conveyance upon the ground of fraud and deceit, and to recover possession of certain real estate in the town of Okemah, Okfuskee county, described as lots 1 to 9, inclusive, in block 21 of said town. The parties will be referred to as they appeared in the trial court.

The plaintiff's amended petition alleged in substance and effect that plaintiff was, on the 18th day of January, 1924, and at all times mentioned in said petition, an illiterate person, unable to read or write his own name, or to distinguish his own name when written from other written matter, and was of feeble mind, suffering from mental weakness; that his comprehension of the or-

dinary affairs of life was vague and uncertain, and alleged his mental incapacity of understanding and full comprehension of the nature and import of business transactions and the effect thereof upon himself and his property interest; that on the 18th day of January, 1924, he was the owner of the above described property, and that on said day there existed against said property, certain liens and incumbrances, and that said property was badly in need of repair; that to discharge said liens and incumbrances and make the needed repairs, there was required about the sum of $2,000, all of said facts being known to the defendant Walter P. Rhea, and that on or about the said date said Rhea offered to lend the plaintiff said sum of money for such purposes and to take in exchange a mortgage or other proper written instrument conveying said property to secure said loan, which offer the plaintiff accepted; and thereupon plaintiff proceeded at said Rhea's request to sign and acknowledge a certain written instrument conveying said property to said Rhea to secure said loan upon the representation of said Rhea that said instrument was a mortgage; that said representations were false and fraudulent in that said instrument was in truth and effect a quitclaim deed, conveying to said Rhea all of plaintiff's right, title, and interest in and to said property; that said Rhea knew said representations were false, but with the intent to deceive and defraud plaintiff, induced him to sign, execute, acknowledge, and deliver said instrument to said Rhea; that said instrument was not read over to plaintiff nor explained to him by said Rhea, or any other person, and plaintiff had no means of knowing the contents and meaning thereof; and that relying upon the good faith and representations of said Rhea, he signed, acknowledged, and delivered said instrument to said Rhea.

Plaintiff's amended petition further alleged that at the time of the delivery of said instrument, said Walter P. Rhea advanced to plaintiff the sum of $100 as part payment of said $2,000, but otherwise has failed and refused to keep his agreement to advance the remainder of said loan, and plaintiff tenders to said Rhea the sum of $100; that the quitclaim deed was placed of record in the county clerk's office of Okfuskee county.

For answer and cross-petition defendants deny generally all the allegations of the plaintiff's petition, except those specifically admitted. They specifically deny all allega-

tions of fraud and undue influence, and specifically deny that they ever in any way led plaintiff to believe or understand that defendant Walter P. Rhea was loaning money to plaintiff; they allege that said quitclaim deed was for a valuable consideration, without undue influence, fraud, or overreaching; that defendant Walter P. Rhea purchased said property in good faith from the plaintiff; that the consideration for the deed was the payment and assumption of the sewer taxes then due and outstanding against said property in the aggregate sum of $541.39, including interest and penalty, and the further agreement on the part of said Walter P. Rhea to assume and pay off a mortgage indebtedness then being foreclosed on said premises, amounting to the sum of $514.60; and the further agreement upon the said Rhea's part to pay all state and county taxes assessed against said property for the year 1923, and a further consideration of $100, which the said Rhea paid the plaintiff at the time; that the deed to said property was executed by the defendant Walter P. Rhea to the defendant Sallie Rhea, for the reason that said Sallie Rhea's separate estate furnished the money for said transaction; that the defendants satisfied the indebtedness due on account of said mortgage lien by executing to the mortgagee, one Burr Randalls, on account of said mortgage lien, their mortgage on said property, and that said sewer tax warrants have been purchased by said defendants; that they have been in continuous possession of said property since January 18, 1924; and that the claim of plaintiff against said property constituted a cloud upon their title and should be removed.

Plaintiff, for reply to defendants' answer and cross-petition, denied generally all the allegations of new matter therein contained inconsistent with the allegations of the petition.

The case was tried to a jury and resulted in a verdict for the defendants, and judgment was rendered in accordance therewith.

Plaintiff's motion for a new trial was overruled, exceptions saved, and the plaintiff has duly appealed to this court by petition in error and case-made attached for review.

All of the plaintiff's assignments of error are presented under the following proposition:

"That the verdict of the jury is not supported by the evidence, and is against the weight of the evidence, and that the judgment of the court is not supported by the evidence and is against the weight of the evidence."

The evidence discloses that the plaintiff, Sanders, was the owner of the lots in controversy, upon which he maintained a feed yard. There were existing claims and incumbrances on the property, and a real estate mortgage thereon had been foreclosed, judgment rendered against the plaintiff, and the lots in controversy ordered sold, when on the 18th day of January, 1924, the plaintiff and defendant Walter P. Rhea entered into a transaction, the result of which was that the said defendant Rhea secured a quitclaim deed to the said lots and satisfied the said mortgage, paid certain sewer warrants and taxes, and paid the plaintiff $100 in cash. The defendant Walter P. Rhea testified that the total amount paid out by him, and agreed to be paid by him on account of the various liens and incumbrances against the property, exceeded the sum of $1,600.

Prior to this transaction the plaintiff had been endeavoring to find a buyer for this property without success, until the 18th day of January, 1924, when he entered into negotiations with the defendant Walter P. Rhea, which resulted in the execution and delivery of the instrument which shows upon its face to be a quitclaim deed to the real estate involved herein.

It is the theory of the plaintiff that he only desired to secure a loan from the defendant Walter P. Rhea, and that the $100 paid at the time the deed was executed was simply an advancement to be followed by the payment of the balance of the loan thereafter; that he believed that the instrument which he signed and acknowledged was a mortgage. In support of this theory the testimony of the plaintiff and certain witnesses on plaintiff's behalf is pointed out, and the conclusion is drawn that the verdict of the jury and the judgment of the court are not supported by the evidence and are against the weight of the evidence.

If we were confined to a consideration of the testimony of the plaintiff in chief, the proposition presented would be conceded. The plaintiff's testimony was to the effect that he could not read or write, and that he was 71 years of age; that he had a business transaction with the defendant Walter P. Rhea on the 18th day of January, 1924, regarding the property in question; that he first tried to sell the property to the said Rhea, who declined to pur-

chase, and that afterward the said Rhea came to him and offered the plaintiff a loan of $2,000; that he, plaintiff, owed the said Randalls, and that he wanted to "straighten up the sewer business and taxes"; that later the said Rhea met the plaintiff and asked him to go to certain attorneys' offices, which he did, and there the instrument in question was drawn, which the plaintiff signed by his mark, but which instrument the plaintiff thought was a mortgage to secure a loan; that the instrument was not read over to him or explained to him, and that if he made a mark on the instrument he did not know it; that the said Rhea gave him at the time a check for $100, which he at once cashed at a bank. The plaintiff further testified that the said Rhea, after he closed the transaction, agreed to give him, the plaintiff, $50 a month to sell feed for him at the feed and wagon yard located on the lots in question and that the said Rhea had paid him $12.50 per week for a number of weeks.

Dr. Davis, on behalf of the plaintiff, testified that he had been in the plaintiff's home many times and had occasion to observe the plaintiff's mental condition, and that while he had never treated the plaintiff, he had treated the plaintiff's family, and from his observations of the plaintiff it was his opinion that about the 18th day of January, 1924, the plaintiff could not understand in a reasonable manner the nature of a business transaction involving real estate.

The trial court properly required the witness to give specific instances of any act or conduct of the plaintiff, as a basis for his conclusion that the plaintiff was incapable of knowing the nature of the transaction which he had with the defendant. This the witness proceeded to do; but we think it sufficient to say that the particular conduct of the plaintiff, testified to by this witness, consisted of personal conduct on the part of the plaintiff on certain occasions which in no sense reflected upon his ability to look after his own interests, or that such conduct was in any wise incompatible with a reasonable comprehension of business transactions.

A number of witnesses testified to the effect that, from their business relations with the plaintiff, they considered him weak-minded to a certain extent, or as some of plaintiff's witnesses expressed it, "He was inclined to be feeble-minded." Other witnesses on behalf of plaintiff testified that the reasonable value of the property in January, 1924, was from $3,000 to $4,000, but that they knew of no property selling in the vicinity of plaintiff's property in January, 1924, or about that time. Some of these witnesses stated that at or about the time of the transaction involved in the case, a number of business houses in the town of Okemah experienced financial difficulties and closed their doors, and that that situation had a decided effect on the sale of real estate in that town.

The defendant Walter P. Rhea testified in substance that the plaintiff came to him some time prior to the 18th day of January, 1924, to sell him his wagon yard, the property in question, and that at that time he declined to purchase the property; that the plaintiff stated to him that he was about to be sold out; that after the plaintiff had been to see him a number of times with reference to the sale of the property, and on or about the 15th of January, 1924, he, the said defendant, concluded to buy the property upon the following terms: The said defendant to pay the plaintiff $100 in cash and pay all outstanding claims against the property; that the deal was closed up in the office of the law firm of White & Nichols; that when he and the plaintiff first went to the attorneys' offices, the attorneys were not there, and they, the plaintiff and defendant, went out; that later the plaintiff returned to the attorneys' offices alone, and a few minutes thereafter the said defendant returned to the said attorneys' offices, at which time the deed in question was being prepared.

The said defendant further testified that he hired the plaintiff to work in the feed yard at $50 per month, and that the plaintiff continued in that employment for six or seven weeks, and received his compensation weekly for his services; that the defendant Rhea took possession of the property on the 18th day of January, 1924, and at once commenced placing improvements thereon.

It is disclosed by the evidence that the plaintiff went to the office of White & Nichols for the purpose of having a deed prepared, and stated to Mr. Nichols that he wanted a quitclaim deed conveying the property in question to the defendant Walter P. Rhea; that the plaintiff had procured from the county treasurer's office the description of the property, and furnished it to Mr. Nichols, who drew the deed in accordance with the plaintiff's expressed instructions; and that the said defendant Rhea came to the office while the deed was being prepared or after it had been drawn.

Mr. Nichols, who prepared the deed, stated that nothing was said in his office at the time the deed was prepared and executed about the said defendant taking a mortgage. In detailing the circumstances connected with the preparation of the deed, Mr. Nichols testified:

"Well, I drew the deed—and I took it and laid it down for Pete (plaintiff) to sign, and he said he didn't write his name, and I think I had written out the acknowledgment based on the assumption that he signed his name, and when I laid it down he said he couldn't sign his name, and I said we would have to draw a new acknowledgment, and Ben Ballard (stenographer in the office) drew that on there. C. H. Cruce was sitting in the office visiting—and I called for two witnesses, and Mr. White came in, and I think Ben Ballard made his mark. He (plaintiff) went through the formality of touching the pen." ,

It further appears that Mr. Nichols, who was also a notary public, took the acknowledgment of the plaintiff to the deed.

There is evidence conclusive, we think, upon this point: That the plaintiff told a number of persons, witnesses in the case, that he had sold the property in question to the defendant Walter P. Rhea, and was working for him in the feed yard.

There was evidence of a very positive and convincing character, on the part of merchants who had dealt with the plaintiff in a business way for 12 or 15 years, that the plaintiff always knew when he was charged too much and when a mistake was made: that he was careful to take care of his own interest and able to figure up the amount he owed, and what was coming to him; and that while he could not read or write, he always figured his accounts in his head.

With respect to the question of fraud and undue influence, we think it sufficient to say that the evidence is clearly insufficient to sustain this allegation of the petition.

In the case of Adams et al. v. Porter et al., 58 Okla. 225, 158 Pac. 899, it was said by Kane, C. J., writing the opinion of the court:

"In this jurisdiction, and generally, in cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions. It should be of such weight and cogency as to satisfactorily establish the wrongful conduct charged; honest and fair dealing as a rule being presumed."

In the case of Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185, cited by counsel for plaintiff, the rule announced in Beaty v. Hood, 229 Ill. 562, 82 N. E. 350, is quoted with approval as follows:

"To justify setting aside a deed upon the ground that the grantor was weak-minded, the proof must show that he was so mentally unsound as to be incapable of understanding the nature and effect of the transaction, and of protecting his own interest; and it is not sufficient to show that he was not a good judge of land values nor capable of making discreet trades."

In the case of United States v. Maxwell Land Grant Co., 121 S. U. 325-381, 7 Sup. Ct. 1015, 1029, 30 L. Ed. 949-959, it is said:

"We take the general doctrine to be, that when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt." Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112; Brown et al. v. Harmon et al., 115 Okla. 277, 242 Pac. 1047.

The jury's verdict involved a finding that the plaintiff had the ability to understand the nature and effect of the transaction he had with the defendant; and that no fraud or undue influence was used by the defendant Walter P. Rhea in procuring the deed in question.

Where the evidence shows, as in this case, that the plaintiff was not mentally incompetent to enter into a business transaction, and that he did so voluntarily in the absence of fraud or undue influence being practiced upon him, the question of whether the value of the property conveyed by him was of greater value than what he sold it for becomes immaterial, inadequacy of consideration in such case being no ground for setting aside a deed.

From a careful examination of the evidence we are unable to conclude that the judgment of the trial court is against the clear weight of the evidence.

We think the judgment should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 18 C. J. p. 218, § 131; 14 R. C. L. 590; 3 R. C. L. Supp. p. 252. (2) 22 C. J. p. 147, §82.