SCHATZ v. WINTERSTEEN et al.

No. 33326.   May 10, 1949.
Rehearing Denied June 14, 1949.
Second Petition for Rehearing
Denied July 19, 1949.

*208 P. 2d 1136.*

P. D. Erwin, of Chandler, and K. D. Greiner, of Stillwater, for plaintiff in error.

Brown Moore, of Stillwater, for defendants in error.

JOHNSON, J. In this case plaintiff, Alice Schatz, seeks to set aside a quitclaim deed executed by Walter O. Carpenter to Lowell D. Carpenter conveying to him 140 acres of land situated in section 10, township 19, range 2 east, Payne county, Oklahoma.

Plaintiff is the daughter of Walter O. Carpenter and Lowell D. Carpenter is his son.

The deed was executed on the 6th day of December, 1933, and was placed of record on the 13th day of May, 1944.

Walter O. Carpenter, grantor in the deed, died on the 4th day of May, 1946, and Paul A. Wintersteen was appointed administrator of his estate. Suit was instituted by plaintiff on the 31st day of May, 1946, against the administrator of the estate, and Lowell D. Carpenter and Ada Carpenter, his wife, to set aside and cancel this deed and is predicated on mental incapacity of deceased, grantor, to execute the deed; that the deed was obtained through fraud and undue influence and nondelivery of the deed.

The trial court found the issues generally in favor of defendant, denied plaintiff any relief, and entered judgment in favor of Lowell D. Carpenter quieting title to the land in him. Plaintiff has appealed and challenges the judgment on the ground that it is not supported by the evidence and is contrary to law. Since Lowell D. Carpenter is the principal party defendant in this action, we shall hereinafter refer to him as defendant.

It is contended by plaintiff that the clear weight of the evidence shows that defendant obtained his deed from deceased through fraud and undue influence. In support of such issue she has offered evidence in substance as follows :

The land involved in the action constituted the original homestead entry of deceased. He thereafter erected a house on the farm where he lived until his death. Plaintiff and defendant, who were then small children, lived with him for a number of years. Both defendant and plaintiff thereafter married, and in the year 1933 deceased built an additional small house on the farm where plaintiff has since resided, and a few years thereafter he built another house on the farm where defendant now resides. Defendant continued to live and reside in the home with deceased until the new house was built. Deceased had constructed on the land a golf course which he and defendant operated. Deceased managed and controlled the business and defendant did the work necessary to keep the course in order. There was also some farming done on the land. Deceased directed the manner in which the land should be farmed, and defendant did the work on the farm and received for his services one-half of the net profits derived both from the golf course and the farm.

On the 6th day of December, 1933, deceased executed a quitclaim deed conveying to plaintiff a small tract of land in the southeast corner of the farm which is referred to by the parties as the home-house-and lot, and on the same day executed a like deed conveying to defendant 140 acres of land. The deeds were held by deceased until the 13th day of May, 1944, at which time they were recorded. The deed of plaintiff after recording, together with several government bonds, maturity value of $2,000, a gift from deceased, was delivered to plaintiff by mail. The deed conveying the land to defendant, after having been recorded by deceased, was returned to deceased. The only evidence that the deed conveying the land to defendant was ever delivered to him was the recording thereof. (Did this constitute a delivery? This question we shall discuss later.) Plaintiff knew nothing of the execution of either of these deeds until she received her deed. She then discovered through the newspapers that deceased had also executed and recorded a deed to the 140 acres of land conveyed by him to defendant. Deceased was 72 years of

age at the time the deeds were executed and 83 years of age at the time they were recorded. Deceased's health began to fail several years prior to the time the deeds were recorded, and in the year 1945 he sustained a severe stroke of paralysis which finally resulted in his death. There was no consideration for the deeds except love and affection.

The evidence is in conflict as to the value of the land involved. The weight of the evidence, however, shows the 140 acres to be of the value of $50,000. The evidence does not establish the value of the house and lot deeded to plaintiff.

This, in substance, constitutes the evidence upon which plaintiff relies to sustain her allegation of fraud and undue influence. It is in effect conceded by counsel that the evidence would be insufficient to establish such fact had the transaction taken place between strangers. It is, however, contended that since it has been shown that the relation of father and son existed between the parties the above evidence is sufficient to raise a presumption of fraud and undue influence and to cast the burden on defendant to go forward with the proof and to show that the transaction was fair, free from fraud and undue influence; that he offered no evidence tending to meet this burden and the court should therefore have canceled and set aside the deed.

Plaintiff in support of the above contention relies upon the following authorities: Weitz v. Moulden, 109 Okla. 119, 234 P. 583; Parker v. Parker, 75 Okla. 234, 182 P. 697; Flowers v. Flowers, 94 Okla. 134, 221 P. 483; McDaniels v. Schroeder, 128 Okla. 91, 261 P. 224, and kindred cases. These cases hold that where the parties stand in the relationship of trust and confidence, and the party in whom the confidence is reposed obtains an apparent advantage over the other in a transaction between them, such transaction is presumed to be fraudulent and void and casts the burden upon the party who seeks to sustain the transaction to go forward with the proof and show that he has taken no advantage of his influence and the transaction is fair and free from fraud.

The principle of law announced in the cited cases is well established but cannot be applied to the facts in this case. All of these cases show that a confidential relationship existed between the parties; that confidence was reposed in the party claiming the benefits of the transaction, and that such confidence was betrayed; that he in some manner suggested and advised the transaction to be made and used his influence in causing the same to be consummated or that there was such suspicious circumstances surrounding the transaction or the transaction was so unusual as to raise a presumption of fraud and undue influence. No such state of facts has been shown to exist in the instant case. There is no evidence that deceased placed trust or confidence in the defendant. There is no evidence to the effect that he consulted with or sought advice from the defendant in the management and conduct of his business, or that the defendant in any manner attempted to or did exert influence over him. There is no evidence tending to show that defendant in any manner suggested or advised the execution and recording of the deed or that he had any knowledge of the intention of deceased to execute the deeds until after they were executed. Nor is there shown any such suspicious circumstances connected with the transaction which would indicate that the will of deceased was merely the will of defendant. In short, there is nothing in the evidence which tends to show that the act of deceased in conveying his property was other than his free and voluntary act and deed, and that the deeds were executed for the purpose of dividing the land between his only children and heirs, and that the division was made in the exact manner in which he wished and intended it to be divided.

The evidence offered by plaintiff merely shows that the relationship of father and son existed between the parties at the time the transaction was consummated; that the result of the transaction was to divide the land between the parties to this action and that the division was made unequal; that the association between deceased and defendant was such as to afford defendant the opportunity to exert undue influence. The evidence is wholly insufficient to either establish or raise the presumption of fraud and undue influence and is insufficient to cast the burden upon the defendant to affirmatively prove that the transaction was fair and free from fraud and undue influence.

The rule stated in 11 A. L. R. p. 746, as applicable in cases of this character, is pertinent here. It is there said:

"The rule most consonant with reason would seem to be, not that there is always a presumption of undue parental influence in every case of conveyance from a child to parent, or that there is always a presumption of validity in such a case, but rather that courts of equity, in examining such transaction, will carefully search for suspicious circumstances having a tendency to show unfairness or undue influence, and, in case any such circumstances are found, will require the party claiming the benefits of the contract to clear the transaction of any such cloud."

However, the record in this case does not reveal any evidence of circumstances so suspicious as would lead to the conclusion that the transaction was induced through fraud and undue influence.

The fact that the relationship of father and son existed between the parties is not in itself sufficient to raise the presumption of fraud and undue influence. It is only when in addition thereto a confidential relationship is shown to exist between them that the presumption arises and casts the burden upon the party claiming the benefits of the transaction to prove the same to be fair and free from fraud. Flowers v. Flowers, supra; Weitz v. Moulden, supra.

In the case of Lillie v. Lyon, Ex'r, 195 Okla. 597, 159 P. 2d 542, this court said:

"The mere existence of confidential relationship between testator and beneficiaries under his will does not raise a presumption that the beneficiaries have exercised undue influence over the testator and does not cast upon the beneficiaries the burden of proof upon the issue of undue influence."

We have also held that power and opportunity to exert undue influence is not in itself sufficient to raise the presumption that such influence has been exerted. Sporn v. Herndon, 190 Okla. 149, 121 P. 2d 602; Canfield v. Canfield, 167 Okla. 590, 31 P. 2d 152.

Plaintiff next contends the evidence shows that the deed to defendant was never delivered to him, and therefore title to the property did not pass but still remained in deceased at the time of his death. There is no other evidence tending to show a delivery of the deed unless it can be said that the recording of the deed constituted a delivery.

Plaintiff contends that such recording does not constitute evidence of delivery. In support of this contention she cites the cases of Belky v. Terrell, 93 Okla. 134, 219 P. 887; and King v. Antrim Lumber Co., 70 Okla. 52, 172 P. 2d 958. These cases hold that the mere recording of a deed will not constitute a delivery where the evidence shows that the intention of the grantor in making the deed was not to pass title to the grantee but merely to place the property beyond the reach of the creditors of the grantor.

In the case of O'Neal v. Turner, 197 Okla. 527, 172 P. 2d 1013, we held that the recording of a deed by the grantor with the intention that it be effective as a conveyance may constitute delivery and that the grantor's intention in such case is a question of fact to be determined from the evidence and circumstances peculiar to each case.

The evidence in the present case shows that after the deed was executed, but before it was recorded, deceased continued to control and manage the property and asserted title thereto; that after the recording of the deed defendant assumed control and management of the property and continued in such management and control until the date of the death of deceased; that deceased up to the time the deed was recorded regularly paid the taxes on the property, and that thereafter and up to the time of the death of the deceased the taxes were paid by defendant. We think this evidence sufficient to show that deceased recorded the deed with the intent to make it effective as a conveyance, therefore sufficient to constitute delivery.

The contention of plaintiff that deceased was not mentally capable of transacting business at the time the deed was executed or when it was recorded is not sustained by the evidence. The great weight of the evidence is to the contrary. The evidence as a whole fails to show that deceased was then feeble-minded or that he was mentally incompetent to transact business, but, on the other hand, shows that he had sufficient mental capacity to know and appreciate the nature and consequences of his acts.

It is the contention of the plaintiff that the testimony of the defendant's lay witnesses as to the deceased's mental capacity was improperly admitted. Plaintiff states that the vital time was May, 1944. Since that was the time the deed was recorded and could have been delivered to defendant, and that the opinion of all the defendant's lay witnesses as to the competency of deceased covered a running period of time for a number of years previous to such date, and, also, that the means of the knowledge of all these witnesses are trivial, sketchy, and very unsatisfactory, these contentions are not well-founded. All the witnesses that both plaintiff and defendant called were nonexpert and were governed by the rule enunciated by this court in the recent case of Brown v. Chaddick, 197 Okla. 515, 172 P. 2d 996, which is as follows:

"Nonexpert witnesses acquainted with the person whose sanity is in question, and who have had sufficient opportunities of observing such person may after stating the facts which they have observed, give their opinion as to his sanity, or mental condition and his ability to understand and attend to business transactions and care for his property."

There were 18 witnesses called on behalf of the defendant, both professional and nonprofessional persons of high standing in the community, who testified that they were acquainted with deceased; that they had sufficient opportunity of observing him; that they talked with him daily, weekly or monthly over a long period of time, including the very time in issue. They stated the facts which they observed and then gave their opinions as to his sanity or mental condition. It was stated by these witnesses that deceased had the ability to understand and attend to business transactions and care for his property.

There were witnesses called by the plaintiff who gave different versions of the deceased's mental condition, but the court believed the evidence adduced on the part of the defendant, and from a careful reading of all the evidence, we are of the opinion that the court did not err in the admission and consideration of this evidence.

Plaintiff in error further contends that the defendant, Lowell D. Carpenter, was an incompetent witness and that the court erred in permitting the defendant, Lowell D. Carpenter, and wife, to testify concerning transactions with his father. Plaintiff's objections are that the defendant testified that he assisted his father in the operation of the golf course upon the land in question and received 50 per cent of the profits; that his father had suffered a stroke of paralysis in 1945; that he assisted his father in building the golf course, mowed the fairways and farm-

ed the place, and himself suffered a nervous breakdown in April 1946, and that he lived in the old house on the premises.

An examination of the record discloses that the plaintiff herself preceded the defendant on the witness stand and testified to substantially the same state of facts. If the defendant was an incompetent witness, his evidence was merely corroborative of the testimony of the plaintiff, and the error, if any, in permitting the defendant to testify regarding these matters was harmless error.

In Kimmell v. Goehler et al., 99 Okla. 273, 226 P. 576, this court held:

"The improper admission or rejection of evidence, if not prejudicial to the party complaining, is not ground for reversal."

To the same effect is Peoples Finance & Thrift Co. v. Fuller et al., 196 Okla. 32, 162 P. 2d 189.

Judgment affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, GIBSON, LUTTRELL, and HALLEY, JJ., concur. O'NEAL, J., concurs in result.

