William H. BOWEN, Plaintiff in Error,

v.

Sarah E. HAMILTON, Nee Bowen, and Wesley Hamilton, Defendants in Error.

No. 40390.

Supreme Court of Oklahoma.

May 27, 1964.

Rehearing Denied July 7, 1964.

Charles B. Tucker, James M. May, Mc-Alester, for plaintiff in error.

R. Kay Matthews, Atoka, James Driscoll, Seminole, for defendants in error.

JACKSON, Justice.

In the trial court, plaintiff Sarah Hamilton sued her son, William Bowen, in an equitable action for the cancellation of a deed executed on October 6, 1958, which conveyed approximately 30 acres of land from the mother to the son. Grounds alleged were lack of consideration and fraud, deceit and misrepresentation on the part of the son. The mother's second husband was made a party to the action as an oc-cupant of the premises, upon the defendant son's motion, apparently in anticipation of the cross petition he later filed asking that his own title to the premises be quieted. Judgment of the trial court was for the mother, and the son appeals.

His first proposition on appeal is that the court erred in not sustaining his demurrer to the petition. He invites our attention to the fact that the mother pleads in her petition that she was led to execute the deed "by him and others", and that she was informed that she had to deed all of her property "away, or to some other person" in order to get "welfare assistance". He says that the petition is uncertain as to whether the plaintiff relied upon what her son told her or whether she relied upon the "encouragement of others".

We do not so construe the petition. Although it is not as precise as it might have been, taken as a whole it is sufficient to charge that the mother placed reliance upon the alleged misrepresentation of the son, and acted thereon; it alleges, among other things, that the deed was obtained from the plaintiff "by the fraud, imposition and misrepresentation of the defendant".

Under this proposition, defendant son also cites Nicholson v. Roberts, 144 Okl. 116, 289 P. 331, for the rule that a petition in an action for rescission of contract, which does not contain an offer to restore to defendant the consideration paid to plaintiff on the contract, is demurrable. In that case a contract for the sale of real estate was involved, and the petition affirmatively showed that a part of the consideration had been paid. Since no offer of restoration was made, this court reversed a judgment for plaintiff because of error by the trial court in not sustaining the demurrer to the petition.

As heretofore noted, the petition in the case before us alleges that the deed was executed without consideration. Since it affirmatively appears in the petition that plaintiff received nothing from defendant by virtue of the instrument sought to be cancelled, there was nothing for her to re-

store, and the general rule requiring an offer of restoration is not applicable. See 12 C.J.S. Cancellation of Instruments § 44 b(4); see also Hallam v. Bailey, 66 Okl. 46, 166 P. 874. We hold that the court did not err in overruling the demurrer to the petition.

The second proposition questions the sufficiency of the evidence to support the judgment.

In an action of equitable cognizance the Supreme Court will examine the entire record and weigh the evidence but will not reverse the trial court unless the judgment is clearly against the weight of the evidence. Walden v. Vining, Okl., 377 P.2d 574.

The plaintiff, Mrs. Hamilton, testified that her first husband died on July 17, 1958. All parties at that time apparently thought that title to the premises had been held by the husband and wife as tenants in common (although it was actually held by them as joint tenants). Mrs Hamilton testified that soon after her husband's death, the defendant, her son, "started in the next day right after he passed away" to get record title changed. About two weeks after the death of the father, all of the children quitclaimed the premises to their mother. She testified that soon thereafter the defendant "started in on me to get the papers signed up to get assistance" and on October 6, 1958, a deed conveying the premises from her to the defendant was executed in the office of a notary public. Although admitting that the signature on the deed was hers, she testified she could not remember signing it, had never been in the office where it was supposed to have been executed, and did not know the man who took the acknowledgment as notary public. Although she knew she was not old enough to get old age assistance, she testified her son talked to her about a "widow's relief" and "He told me he made several trips down here and that if I would sign these papers I could get a widow's check".

The defendant testified that "I just told her I just wanted to keep the place for all the kids to come home to that I didn't want it disposed of and I knew if we didn't do this she would probably sell it" and that the arrangement was that "as long as she was single she could live there rent-free except for the taxes and insurance and I was to keep the place up". He denied ever talking with his mother about getting her any kind of relief payments, and said that he never considered her eligible for relief assistance. On cross examination he said that "later on she did ask me something about" the welfare assistance. He testified as to numerous checks in small amounts which he said were written for his mother for such things as groceries and utility bills. They were not introduced in evidence, but it appears that all of them were dated subsequent to the date of the deed conveying the premises to him. On cross-examination, he admitted that notations on many of the checks were added after they had been cashed and that his wife "must have wrote it on there for income tax purposes".

For the defendant, the notary public who took the acknowledgment on the deed of October 6, 1958, gave testimony that was indefinite and unsatisfactory. He testified that he typed the deed, which conveyed the property from "Sarah E. Bowen, an unremarried widow" to the defendant, her son. He could not be sure who was present when he typed it, but he thought Mr. Bowen and his mother were there. He could not remember any discussion, or whether the instrument was actually called a deed by the mother or the son; he said he had the impression that the son did all the talking and instructed him to draw the deed. He said Mrs. Bowen signed it in his office and did not acknowledge it "orally". He said he didn't "recall talking to her at all".

Several other witnesses testified for the mother, including two of her other sons. We might observe that there is much testimony for both sides in the record which is hearsay and otherwise incompetent and immaterial. We assume that no objection was made on the theory that the trial judge, who

was hearing the matter without a jury, would disregard the improper testimony. No complaint in that regard is made in the briefs on appeal except as to certain testimony which could be construed as raising a question as to the mental competency of the mother to execute the deed. Since the incompetency of the mother was not pleaded in the petition, we have disregarded such testimony, as the trial judge apparently did.

The record as a whole justifies the conclusion that there is a considerable amount of bitterness between the mother and the son, some of it no doubt being rooted in her second marriage. She testified he ordered her and her present husband, in violent language, to vacate the premises; he flatly denied doing so. In general, it may be said that the evidence is squarely in conflict on all material points.

■ After a careful consideration of the evidence in this case, we cannot say that the judgment of the trial court is clearly against the weight thereof.

The third proposition is that the plaintiff (the mother) is "estopped to seek relief prayed for by (a) lapse of time, (b) attornment and (c) coming into equity with unclean hands".

The only authority cited on the question of laches is the case of Skinner v. Scott, 29 Okl. 364, 118 P. 394, decided in 1911. In that case, a judgment for defendants in an action for the cancellation of an instrument was sustained upon the ground, among others, that plaintiffs had been guilty of laches, where they waited six months after discovery of the fraud to begin their action; suffered it to be dismissed two and one half years later for lack of prosecution; filed a motion to reinstate it three and one-half years after that and, upon their motion being denied, waited another four months before filing a second action.

■■ In the case now before us the facts are entirely different. Defendant did not plead laches as a defense, and there was no motion to dismiss for lack of prosecution; the case was tried the month after the peti-

tion was filed. The demurrer to the petition was upon the ground of failure to state a cause of action, and laches was not mentioned. From our examination of the record, it does not appear that the question of laches was presented to the trial court. The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Moore v. Moore, 167 Okl. 365, 29 P.2d 961. We hold that the claim of plaintiff in this case was not barred by laches.

■ Defendant's arguments under parts (b) and (c) of the third proposition consist of a general discussion of the evidence, with no authority cited. With regard to attornment, defendant's own testimony affirmatively shows that he was paid the sum of five dollars per month for "taxes and insurance" for the three months immediately preceding the filing of suit, but that said payments were made by the mother's second husband, and not by the mother. The second husband's "attornment", if any, is therefore no bar to the claims of the mother, and there is no evidence that the mother ever paid, or agreed to pay, any rent to her son.

■■ On the "unclean hands" question, there was no evidence that the mother knew *why* she would have to convey the lands to someone else before she could qualify for welfare assistance; in other words, there was no evidence that she knew it was wrong, or would amount to a fraud upon the state. On the other hand, there was evidence that the defendant had made inquiries of the authorities regarding welfare assistance. In 19 Am.Jur. Equity, Sec. 478, it is said with regard to the application of the "clean hands" maxim, "Relief will be denied only where the parties are shown to have been in pari delicto or to have acted with the same degree of knowledge as to the illegality of the transaction". A general finding of the trial court in a suit of equitable cognizance is a finding of each special thing necessary to sustain the general finding. Coca-Cola Bottling Co. v. Chandler,

207 Okl. 613, 251 P.2d 1042. The evidence in this case supports the trial court's implied finding that the parties were not in pari delicto, and that plaintiff was not barred by the "clean hands" maxim.

The judgment of the trial court is affirmed.

BLACKBIRD, C. J., and DAVISON, WILLIAMS and IRWIN, JJ., concur.

HALLEY, V. C. J., and JOHNSON and BERRY, JJ., dissent.

JOHNSON, Justice (dissenting).

I dissent from the conclusions reached by the majority opinion.

The first paragraph of the syllabus would imply that there was no consideration for the conveyance involved. This is not sustained by the record. There is no dispute in the evidence that the son agreed to pay the taxes, pay the insurance, keep up the repairs on the property and permit his mother to live on the premises rent free for as long as she remained single. These things he did for a period of almost three years, at which time the mother remarried, and this lawsuit was commenced. In the event of her remarriage, she was to continue to live on the premises upon paying the taxes and insurance. There was a good and valuable consideration for this conveyance, and hence the rules applied in the majority opinion have no application here.

The second paragraph of the syllabus would indicate that the findings of the trial court were sustained by the evidence. This implies that there was evidence that the son had committed fraud, which was the basis of the suit. A careful searching of the record in this case will disclose that there is *no* evidence of fraud in this record, and the conclusion of the court is erroneous and inequitable under the facts and circumstances in this case. The defendant was a dutiful son and was solicitous for her welfare. He sold the cattle which his father left when he died and turned the proceeds from the sale over to his mother. He made his mother an army allotment of $37.50 per month, bought a butane system for the house, pruned trees, bought groceries when he visited her, and paid the taxes on the place for 1959, 1960 and 1961 and paid the insurance on the place, as pointed out above. All went well between mother and son until her marriage to her second husband, Hamilton, after which the son had difficulties with him.

The rules of evidence as to the degree of proof required to establish fraud are applicable in this case since the mere relation of mother and son does not in itself create a confidential relationship. The evidence in this case does not show such relationship sufficient to raise the presumption of fraud and undue influence and cast the burden upon the defendant to rebut such presumption.

In the case of Treece v. Treece, Okl., 366 P.2d 625, we said:

"A confidential relationship does not necessarily arise from the relationship of parent and child; and in determining the validity of deeds from parent to child the existence of fraud and undue influence depends on the facts and circumstances of each particular case, and if the evidence of plaintiff fails to show fraud and undue influence and a confidential relationship between grantor and grantee, then the plaintiff's cause must fall."

In the body of the opinion we said:

"The case of Schatz v. Wintersteen, 201 Okl. 660, 208 P.2d 1136, 1139, is similar in some respects to the present case. In speaking there of the parent-child relationship and undue influence, we said:

" 'The fact that the relationship of father and son existed between the parties is not in itself sufficient to raise the presumption of fraud and undue influence. It is only when in addition thereto a confidential relationship is shown to exist between them that the presumption arises and casts the burden upon the party claiming the benefits of the transaction to prove the same to be fair and free from fraud. Flowers

v. Flowers, supra; Weitz v. Moulden, supra. (109 Okl. 119, 234 P. 583)"

\* \* \* \* \* \*

"The plaintiff urges that a confidential relationship is shown by the evidence in this case. We do not believe that such relationship is established. In defining a confidential relation, this Court held in Hamburg v. Doak, 207 Okl. 517, 251 P.2d 510:

" 'A confidential relation arises by reason of kinship between parties or profession, business or social relations that would reasonably lead an ordinary prudent person in management of his business affairs to repose that degree of confidence in the defendant, largely resulting in substitution of the will of the defendant for that of the plaintiff in material matters involved in the transaction.' "

See also Sporn's Estate v. Herndon, 190 Okl. 149, 121 P.2d 602; Canfield v. Canfield, 167 Okl. 590, 31 P.2d 152; Hamburg v. Doak, 207 Okl. 517, 251 P.2d 510, and Smith v. Smith, Okl., 365 P.2d 142.

Applying the principles of law in Treece v. Treece, supra, and the cited cases, I do not believe that a confidential relationship between the plaintiff mother and the defendant son is established. It was incumbent upon the plaintiff to submit proof to sustain the allegations of fraud by a preponderance of the evidence and to repel all opposing presumptions and proof of such weight and cogency as to satisfactorily establish the wrongful conduct charged. Sanders v. Rhea, 119 Okl. 208, 249 P. 350.

The third paragraph of the syllabus of the majority opinion would indicate that the doctrine of laches does not apply. Not only is there grave doubt about this, but that the alleged cause of action was barred by limitation is a strong possibility.

I therefore respectfully dissent.

I am authorized to say that Vice Chief Justice HALLEY and Justice BERRY concur in this dissent.