## TEAGUE, Adm'r, v. MURPHY.

No. 11557—Opinion Filed June 19, 1923.

### 1. Deeds—Cancellation—Fraud of Grantee —Confidential Relations.

If a person standing in a confidential relation with another, undertakes to accept deeds of conveyance for property from the grantor, in trust for a relative of the grantor, and intentionally or inadvertently accepts and takes a conveyance to the property in fee simple, the act unexplained constitutes fraud, and is sufficient grounds to set aside the instrument of conveyance.

### 2. Same.

Where the evidence of the plaintiff, as administrator of the decedent's estate, shows that his intestate was suffering from physical and mental impairment that rendered her incapable of understanding the nature of the transaction, and further shows no valuable consideration passing from the grantee to his intestate, and the grantee, who was a first cousin of the decedent, accepted the conveyance of the property to the exclusion of the husband and children, this makes a prima facia showing for cancellation of the conveyances between the administrator of the estate and the defendant.

### 3. Same—Burden of Proof.

Proof of the foregoing elements by the plaintiff, coupled with the fact that the conveyances by the decedent were the natural acts of an unnatural person, attached the badge of fraud to the conveyances and shifts the burden to the defendant to show by clear

and convincing testimony that the grant was the free and voluntary act of the decedent, and that she was in possession of her normal mental faculties.

### 4. Appeal and Error—Review of Equity Case —Disposal.

In cases of purely equitable cognizance this court will weigh the evidence, and if the judgment of the trial court is clearly against the weight thereof, will reverse the cause and render or direct the rendering, of such judgment as ought to have been entered in the first instance.

### 5. Deeds — Cancellation for Fraud — Sufficiency of Evidence.

We have carefully examined the record in this cause, and find that the judgment of the court is clearly against the weight of the testimony, as the defendant failed to discharge the burden cast upon her by plaintiff's proof of a prima facie showing for the cancellation of the conveyances claimed by the defendant.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by J. C. Teague, administrator of the estate of Francis Teague, against Omega Murphy for cancellation of deed and assignment. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

H. A. Johnson, for plaintiff in error.

Hills & Bird, for defendant in error.

Opinion by STEPHENSON, C. Plaintiff, as administrator, commenced his action on June 6, 1919, in the district court of Garfield county, against Omega Murphy, as defendant, for the cancellation of a deed of conveyance and assignment of contract, covering real property situated in Enid, Okla. The plaintiff alleged that his wife, Francis Teague, was the owner of the property at the time of her death in a hospital at Enid, on May 27, 1919. The decedent underwent a major operation on May 13, 1919, from which she failed to recover. The evidence shows, on the part of plaintiff, that decedent left her husband, J. C. Teague, and three children of a prior marriage, the youngest being a daughter 15 years of age. The evidence of the surgeon performing the operation was to the effect that decedent was unable and incapable of understanding things that transpired about her during the greater portion of the time after the operation, and that her mind was not clear and normal at any time. This condition was the result of physical suffering and medicine administered

for her relief. So far as the record shows, the husband and her children administered to her needs and wants as is ordinarily done by those of the same degree of kinship. The evidence discloses that the defendant, who was a first cousin, came to the hospital about May 23, 1919, to visit the decedent; whether she came of her own volition, or at the request of the decedent, is not clear. Soon after the death of plaintiff's wife, it was found that the defendant held a deed to lots 1, 2 & 3 in Highlawn, 2nd addition to Enid, and also assignment of a contract for the sale of real estate situated in the same addition upon which there was an unpaid balance of about $400. The decedent, so far as the records show, did not make known to her husband or other relatives the fact that she intended to make, or had made, the conveyance in question. The evidence discloses that the defendant also took a deed from Francis Teague to the homestead of the decedent and plaintiff, at the time of taking the other deeds. The plaintiff further proved an admission by the defendant, in the trial of another cause growing out of this transaction, that she did not pay any consideration for the conveyances, which admission the defendant did not deny in this cause, nor did the defendant attempt to prove in this cause the payment of a valuable consideration for the conveyances. The defendant failed to show any reason why the decedent favored her with the conveyances of the property, to the exclusion of her husband and children, other than through one of her witnesses, Mrs. Mary Moffett, who testified in part as follows:

"Q. So Mrs. Teague, you say, wanted Mrs. Murphy to have her property? A. Indeed, she did. Q. In order that Mrs. Murphy, Mrs. Teague's own daughter would be sure to get it later? A. That she knew that if Mrs. Murphy got the property, that her daughter would get some benefit from it when she was of age."

The witness apparently had reference to the youngest daughter, who was then about 15 years of age. The foregoing reason was the only one shown by the record as explaining the preference. The evidence, while showing that the defendant was a first cousin of the decedent, did not show any close relationship or friendship between the parties in previous years. This witness evidenced considerable interest in the outcome of the cause, as shown by her answers to the following questions:

"Q. And at this time, you very much, in other words your desire is at this time that Mrs. Murphy would get Mrs. Teague's property, and that she should win out in this

cause? A. Yes, sir. Q. That is your very strong desire, isn't it? A. Yes, sir. Q. And that is your strong desire, notwithstanding the fact that Mrs. Teague has three living children at this time? A. Yes, sir."

If we accept as true the testimony of the defendant, the conveyances were intended to be in trust to the defendant for the use and benefit of the daughter. The defendant assumed to stand in the relationship of a friend to the decedent, and, occupying this position, if she undertook the preparation of instruments to convey title in the manner above set forth, she was bound in good faith and conscience to carry out the wishes of the decedent. If the defendant inadvertently caused to be prepared and executed, conveyances that apparently vested her with both legal and equitable title, knowing the wish of the decedent, the defendant would be estopped in equity to assert title adverse to the daughter. In seeking to uphold her conveyances the defendant attempts to show that a friendly relationship had existed between her and the decedent for some time before her death. If this be true, such would not constitute a good consideration for the deed and assignment, and for the want of consideration would be void. Hartley's Lessee v. M'Naulty (Pa.) 2 Am. Dec. 396.

There is a conflict among the decisions as to whether or not blood relationship as far removed as a cousin will constitute a good consideration for a conveyance. The English rule is that there must be a consideration of blood or marriage to support a covenant to stand seized to the use of another, and the weight of American cases is in accord with the English authorities. Houston v. Blackman (Ala.) 41 Am. Rep. 756; Bell v. Scammon (N. H.) 41 Am. Dec 706; Adams v. Ross (N. J.) 82 Am. Dec. 237.

The rule laid down by the foregoing authorities will include persons related to the grantor in the degree of first cousin, but the authority further announces the rule that a grantee resting his conveyances upon a good consideration, related in the degree of cousin to the grantor, must show that the conveyance is free and clear of fraud.

If the reasons as set forth by the defendant's witness were not the cause for the conveyances, then the defendant must rest her deed upon the natural act of an unnatural person. Either instance, unexplained by the defendant, attaches the badge of fraud to the conveyance and renders the same void. The plaintiff, by proof introduced, made out a prima facie cause for cancellation and shifted the burden to the defendant to remove the badge of fraud from the transaction by clear and convincing testimony, on account of the fact that the defendant occupied a place of trust in relation to the decedent. The act of the mother in conveying all her property to a virtual stranger, to the exclusion of her husband and children, is an unnatural act, and must flow from an impaired mentality. The only reason offered by the defendant for the unnatural act of the mother placed the defendant in the attitude of taking the fee-simple title to the property when the grantor intended merely to convey the property in trust for the use of her daughter. The attitude of the defendant in asserting ownership to the property through the conveyances places her in the position of having committed a fraud in the procurement of the instruments.

As the defendant failed to discharge the burden cast upon her by the plaintiff in making prima facie case for the cancellation of the instruments, the judgment of the court should have been for the plaintiff, granting the relief as prayed for in the action. In cases of purely equitable cognizance this court may examine and review the evidence, and if the evidence and decision of the trial court clearly appear to be against the weight of the evidence, the judgment will be reversed. Coley v. Dore, 56 Okla. 443, 156 Pac. 164; Mitchell v. Leonard, 55 Okla. 626, 155 Pac. 696. And in equitable actions this court will weigh the evidence and if the judgment of the trial court is clearly against the weight thereof, will reverse the cause and direct the rendering of such judgment as ought to have been rendered in the first instance. Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069.

We have carefully examined the evidence and record in this cause, and find the judgment to be against the weight of the evidence.

We therefore recommend that the cause be reversed and remanded, with directions to enter judgment for the plaintiff granting the relief as prayed for in the action.

By the Court: It is so ordered.