## ABRAMS v. NEAL, Adm'r.

No. 26816. Oct. 20, 1936.

Rehearing Denied Nov. 10, 1936.

E. C. Fitzgerald, for plaintiff in error.

Frank Nesbitt and L. A. Wetzel, for defendant in error.

PER CURIAM. The amended petition on which this case was tried alleged that Charles A. Neal was the duly appointed, qualified, and acting administrator of the estate of Melissa J. Abrams, deceased, by order of the county court of Ottawa county, and that this action was prosecuted for the benefit of the estate.

In the first cause of action the petition further alleged that Mrs. Abrams died intestate in Ottawa county, being a resident thereof, on the 21st of December, 1934, leaving as her sole and only heirs at law her two sons, S. W. Abrams and Earl B. Abrams, the defendant, both of whom were of age; that at the time of the death of Mrs. Abrams, and for many years next prior thereto, she was the sole owner of the entire estate and seized and in the open, undisputed, and notorious possession of about 400 acres of land in Ottawa county; that the administrator succeeded to the rights of possession and the title of Mrs. Abrams to this property; that since the death of Mrs. Abrams, Earl B. Abrams, hereinafter referred to as the defendant, filed for record an instrument designated a warranty deed with the county clerk of Ottawa county, in which Mrs. Abrams purported to convey to defendant 200 acres of this land, and that this deed was duly recorded in the public records; that since the death of Mrs. Abrams, the defendant also filed on January 4, 1935, another instrument designated "warranty deed". wherein Mrs. Abrams purported to convey to the defendant the remaining 200 acres in said land; that this instrument was also recorded. It was further alleged that immediately subsequent to the death of Mrs. Abrams, the defendant wrongfully took possession of this property, and was in the possession thereof, claiming title and right of possession under and by virtue of the two deeds above mentioned, and defendant refused to deliver possession of this property to the plaintiff as administrator for the purpose of administration, although plaintiff was entitled to possession for said purposes, and that defendant has neither title to nor right of possession of said property.

It was further alleged that both of these deeds were null and void, and of no force and effect for two reasons:

(A) That the deeds and each of them were wholly without consideration; and,

(B) That neither of said deeds was delivered by Mrs. Abrams in her lifetime, nor did she intend to deliver either of said deeds to the defendant in her lifetime, but that on November 15, 1927, Mrs. Abrams executed both of these deeds and kept and retained them in her exclusive possession in her safe-deposit box in a bank in Miami, with the intent and purpose that these deeds should be delivered to defendant after her death; that prior to her death, the defendant, without the knowledge or consent of Mrs. Abrams, took these deeds from the safe-deposit box, retained them in his possession until after her death, and then recorded the deeds; that said deeds were in effect an effort on the part of Mrs. Abrams to make testamentary disposition of this property, but that the same are null and void because they were not executed and published in the presence of witnesses as required by law, and properly attested, and were void as instruments of conveyance because they were never delivered to the defendant by Mrs. Abrams as required by law.

The second cause of action sought to quiet the title to this property in the estate, and to cancel the deeds which the defendant put of record as hereinabove mentioned.

The defendant filed an answer consisting of a general denial to each count in the petition. Thereafter, defendant filed a request that this case be set on the equity docket for the reason that it was an equity case. Subsequently, the defendant filed a motion to strike this case from the jury docket, charging that the same is an equity case. Subsequently, the defendant filed a that possession of the real estate was a mere incident for the equitable cause of action for the cancellation of these deeds. The trial court denied this last motion, and permitted the cause to be tried to a jury over the objections and exceptions of the defendant.

The first question raised by the appeal in this case is that the trial court erred in overruling the motion of the defendant below to strike this cause from the jury assignment and place the same upon the equity docket. The causes of action set out in the two counts of the petition have been set out because of this question raised by the plaintiff in error, who was defendant below.

A careful examination of this amended petition discloses that it is alleged that this property belonged to Mrs. Abrams at the time of her death, and at the time of her death that she was in the open, undisputed, and notorious possession of this property, and that the defendant immediately subsequent to her death wrongfully took possession, and was in possession, and was claiming title and right of possession under the two deeds from Mrs. Abrams to the defendant, and that defendant refused to deliver possession of this property to the administrator for the purposes of administration.

It was further charged that the defendant had neither title to nor right of possession of this property. The first count in the petition, therefore, is to dispossess the defendant for wrongful possession of this property. True, the first count further alleges that the deeds to the defendant were void, and that title never passed because there was a failure of consideration, and because these deeds were not delivered by Mrs. Abrams in her lifetime, and that she did not intend to deliver these deeds to the defendant during her lifetime. Execution of these deeds by Mrs. Abrams on November 15, 1927, is admitted in the petition, however, and it is charged that these deeds remained in her safe-deposit box in a bank at Miami, intending that they should be delivered after her death.

This court has followed the rule that the fact that the petition in an action for recovery of real property prays that title to the real estate sought to be recovered be set at rest or quieted in the plaintiffs did not make the action a nonjury cause, but it remained an action properly triable by a jury under the provisions of the statute. Mitchell v. Gafford, 73 Okla. 152, 175 P. 227; Aldridge v. Anderson, 115 Okla. 131, 240 P. 99; Likowski v. Catlett, 130 Okla. 71, 265 P. 117.

Under section 350, Okla. Stats. 1931, issues of law must be tried by the court unless referred, but issues of fact arising in actions for the recovery of specific real property shall be tried by a jury unless a jury trial is waived or a reference be ordered.

The plaintiff below requested that the case be placed on the jury docket, and the natural inference is that by that request the plaintiff desired that the cause be submitted to the jury on the issues formed. The trial court properly refused to strike this case from the jury assignment, and properly submitted the cause to a jury under the statute and under the decisions of this court. But it is urged that the primary relief sought was the cancellation of these two deeds, and at page 22 of the brief of plaintiff in error counsel says that, upon cancellation of these deeds, the possession would go automatically, and yet counsel for plaintiff expressly undertook to frame his cause of action in ejectment when his real cause of action was cancellation of the deeds, in order that the plaintiff might obtain a jury trial, and this could be for no other purpose. We are not able to agree with this, because, even though the deeds be canceled, it would not necessarily follow that possession would automatically go to plaintiff. We think, also, that counsel had a right to frame his pleadings setting up plaintiff's cause of action as the facts justified.

In Mitchell v. Gafford, supra, this court has approved an opinion by Rummons, C.:

"Under the provisions of this section, the plaintiffs seeking to recover specific real estate, the action was properly triable to a jury, and it seems to have been so regarded by the parties, since the record discloses that both parties waived a jury trial. This cause having been tried by the court upon a waiver of jury, the judgment of the court has the same effect as the verdict of a jury."

In Likowski v. Catlett, supra, this court has announced the rule in an opinion by Justice Riley:

"Where a suit is maintained in the nature of ejectment and joined with an action for the cancellation of deeds of conveyance, held, by reason of section 532, C. O. S. 1921, the cause of action being primarily for the recovery of real estate, the issues of fact were properly triable by a jury."

In Harjo v. Chilcoat, 146 Okla. 62, 294 P. 119, this court makes the distinction very clearly. It is pointed out that there is a distinction between an equitable action and an action to recover real estate where it is charged that the conveyance was wholly void. At the conclusion of the opinion it is said:

"This case is unlike Likowski v. Catlett, 130 Okla. 71, 265 P. 117, wherein it is pointed out that the action was not one to rescind, but one wherein the contention was that the deed was wholly void. Where the deed sought to be canceled is wholly void, no title passes thereby, and its cancellation is not essential to establish the title of one claiming adversely to such deed."

The trial of this cause turned largely on whether the title passed to the defendant from Mrs. Abrams under the deeds which were admittedly in his possession on the 4th day of January, 1935, and for sometime prior thereto, but none of the witnesses definitely fixed the time when these deeds came into the possession of the defendant. The rule seems to be that where a grantee is in the possession of a deed which has been duly executed, a presumption arises that it has been duly delivered. (18 C. J. 418.) The burden of proof rested, therefore, upon the plaintiff below, who was the party disputing the delivery of this deed, and the presumption, being disputable and not conclusive, was open to inquiry. (18 C. J. 418.)

Recording these deeds was not necessary to make the deed effective as a transfer from Mrs. Abrams to the defendant. Pomper v. Behnke (Cal. App.) 276 P. 122.

In Thompson v. McKenna, 133 P. 512, the Court of Appeals of California held that possession of a deed by the grantee is prima facie evidence of its delivery, but being prima facie only, and being presumptive that the title passed to the defendant by reason of possession, it was open to attack and the burden rested upon the plaintiff to show by clear and convincing evidence that the deed has never been actually delivered. (Devlin on Deeds, section 294.)

This court seems to lend support to that rule in Winn v. Willmott, 138 Okla. 177, 280 P. 808.

Did the plaintiff overcome the prima facie case which shows that these deeds were in the possession of the defendant, claiming that he had received them from Mrs. Abrams sometime before her death, but did not record them until after her death because of suggestions made to him by her? A short analysis of the testimony will be of benefit, but no effort is made to set out the testimony in detail.

The notary who took the acknowledgment to these two deeds testified that he knew Mrs. Abrams, and that she came to the bank with the defendant and wanted to have Mrs. Abrams safe-deposit box opened, and that he opened the box and delivered it to Mrs. Abrams. At that time Mrs. Abrams told this party, who was assistant cashier of the First National Bank at Miami, that if anything happened to her she wanted the box arranged so that Earl, the defendant, could come to the bank and go to the box. She thereupon executed on a form furnished by the bank an authority for Earl, the defendant, to go to this box and have access to it. She then acknowledged some papers, and this witness took the acknowledgments, she having already signed them. These deeds are dated November 15, 1927, and were acknowledged November 23, 1927. His attention was called to a stipulation and limitation in this deed making the property inalienable for a period of 25 years from date, but admitted that this was not called to his attention, and that he had no knowledge of where the deeds had been prior to the time she acknowledged them. That after the deeds were acknowledged, Mrs. Abrams put them in the box.

S. W. Abrams, son, testified that he and the defendant were the only children, and that Mrs. Abrams left no will, and that the land described in these deeds stood in his mother's name prior to her death; that Mrs. Abrams and the defendant lived on the property, and that his mother supervised the place, and that he was there frequently, sometimes every few days, sometimes ten days or two weeks between times; that his mother rented the property to tenants in various years, leased some of the property to him personally, leased some to a corporation, and that these properties were developed for mining purposes, the witness developing his properties and the corporation developing its properties. Mrs. Abrams took the royalties from the mines on these properties, and the property was listed for taxes for all years subsequent to 1929, and up to the time of her death, in the name of Mrs. Abrams, and that Mrs. Abrams paid the taxes on this property; that Mrs. Abrams collected the rents from tenants, and Mrs. Abrams supervised repairs and carpenter work on the properties and paid for the same; that the defendant was in the possession of this property up until December 21, 1934, when Mrs. Abrams died. This witness learned of these two deeds sometime after the first of January, 1935, but that Mrs. Abrams had told him about these deeds prior to her death, and sometime just past Thanksgiving in 1934. He testified that Mrs. Abrams told him in the absence of any other parties, after she had

suffered a stroke of apoplexy, and could talk hesitatingly, saying a word or two at a time, that if Mrs. Abrams departed this life the witness would find deeds covering her land to Earl, the defendant, to the witness and to the children of the witness in her lockbox in the Miami bank. Subsequent to her death the witness, in the presence of the defendant, counsel for defendant, Mrs. Neal, the administrator, and one Walter Williams, made an inventory of the contents of the safe-deposit box. At the time this inventory was made, there was a conversation between defendant and this witness, the witness having asked the defendant if he had been in this lockbox at any time since she was taken ill, about the 21st of September, 1934, to which defendant replied that he had not, and the first time this witness actually saw these deeds was at the office of counsel for the defendant sometime in the early part of January, 1935. His attention was called to certain internal revenue stamps affixed to these two deeds, and he stated that the cancellation was not in the handwriting of his mother, but he thought it was in the handwriting of the defendant. At that time the defendant was asked how long he had had these deeds, and counsel for defendant answered that defendant had had them seven or eight months. Then counsel for the plaintiff inquired of the defendant how long he had had these deeds, to which the defendant answered that he did not know, maybe a year and a half, or maybe two years. The defendant was asked where he got these deeds, and where they were delivered to him, and the defendant answered: "Over at the bank." Inquiry was made of what bank, whereupon the defendant said. "The old First National Bank." His attention was called to the fact that the bank had moved to a new location, and thereupon defendant said that he did not know where the deeds had been delivered to him. but they might have been delivered to him at the home place. Finally defendant said he did not remember when and where they were delivered. In this box, however, were two other deeds, one made to the witness for 40 acres of land, and one made to the two children of the witness for 80 acres of land, but the two deeds involved in this action were not in the safe-deposit box. The deeds to the witness and to the children of the witness had not been delivered prior to Mrs. Abrams' death. The defendant entered this lockbox of Mrs. Abrams on the 24th of September, 1934, having access to both boxes which were in her name, and again entered one of the boxes on October 1st.

These entries were made subsequent to the illness of Mrs. Abrams, which was on the 21st of September, 1934, and she was removed to a hospital on the 23rd of September, 1934, but was taken home on October 18, 1934, where she stayed until her death on December 21, 1934. This witness further testified that the defendant stated that the reason he went into this safe-deposit box was because he was running short of funds in one account which had been provided in case of emergency, and that he took certain bonds out of this box in order to get the expenses during the extreme illness of Mrs. Abrams.

On cross-examination this witness explained the relations between him and his deceased mother, and said that his mother was old, and for the ten years prior to her death she had been quite ill with rheumatism, and that parties approaching her and talking with her would influence her into the belief that she had been abused by the witness, and that she would talk bitterly about the witness, but upon open discussion between the two, that everything was completely and satisfactorily understood.

Several witnesses who had farmed this property for Mrs. Abrams testified in regard to leasing the land, one of them for about five years, and another one for about three years, and the substance of the testimony of these witnesses was that they paid the rent to Mrs. Abrams, talked with her about leasing the land. and that she made the lease contracts; that she delivered the rents to Mrs. Abrams, and that the defendant merely directed into what place any grain rent delivered should be placed. One witness, Mr. Stroyick, testified that he had a conversation with Mrs. Abrams sometime in May, 1934, when he went to see her about leasing some land for farming. During this conversation Mrs. Abrams told this witness that if a certain mine did not pay out, whatever money the son, S. W. Abrams, owed to her at the time of her death would come back to her estate, and that she had her papers, deeds, and everything fixed up in a lockbox at Miami, and that they would be there at the time she died.

The administrator testified that at the time of the completion of the inventory of property in the safe-deposit box, Sam Abrams asked Earl Abrams if he had been in that box since Mrs. Abrams took sick, to which defendant replied that he had not, and this witness then said that it made no difference because the records would show who and when anybody was in the box.

Witness Williams testified that he, as assistant cashier, had the records at the bank, and that Mrs. Abrams entered box 155 on January 22, 1934, and again on April 11, 1934, and on September 24, 1934, defendant entered boxes 178 and 155, and on October 1. 1934, defendant entered box 155, and on December 31, 1934, both boxes were opened in the presence of the two sons of Mrs. Abrams and of the administrator when the inventory was made. This witness further testified that subsequent to the authority to the defendant to enter these boxes in 1930, the defendant had never entered the boxes alone before the two dates of September 24 and October 1, 1934.

The defendant demurred to the plaintiff's evidence, which was overruled, but did not renew this demurrer by motion for directed verdict at the conclusion of the case, and therefore the demurrer was waived.

In his own behalf defendant testified that he was a widower, and had been living with his mother about ten years, and had been working and looking after her properties; that after the death of his mother he took the two deeds in controversy to be recorded, and was advised that it was necessary that internal revenue stamps be attached, and that he then put the stamps on and the stamps were canceled by one Frank Hopper, employee in the office of the county clerk in the recording division. He saw these deeds when they were first written, and assisted his mother in the preparation, particularly in regard to the descriptions; that the deeds were signed in his presence out at the home place; that his attention was called to the limitations in the two deeds, preventing alienation for 25 years, and that his mother explained to him the reason, which was that somebody might try to work some kind of a scheme and defraud him out of the property, and thereupon he told Mrs. Abrams that this was all right; he did not want to sell the property anyway. He was present when the acknowledgments were taken, but did not recall whether they were placed in the bank or taken back to the home place. That he next saw them in the fall of 1933, when he had driven Mrs. Abrams to the bank, and that she had three deeds and a bill of sale to some personal property, and on the way home handed these papers to him, saying that they were his warranty deeds and a bill of sale; that the witness then took them home, where they remained possibly five months, and then he brought them to Miami and put them in his lockbox. Witness recalled the day when the deeds were exhibited to his brother, S. W. Abrams, which took place in the office of his counsel, and that he was present when the inventory was made. He was positive, however, that his brother asked him if he had been in Mrs. Abrams' box since her death, because if he had been asked whether he had been in prior to her death, he would have known that the bank kept a record. He admitted entering the lockbox after his mother was stricken, and that he took out two bonds, one for $1,000 and one for $500, and his mother's jewelry, for the reason that his mother wanted the jewelry to be buried with her, and that he needed the use of these two bonds in order to pay the expenses of her illness and the help; that his own funds were low, and it was necessary to use this money. Witness was asked in connection with the meeting between defendant and his brother whether he remembered how long he had these deeds, and witness doubted if he had any answer, because he had been advised not to answer by his attorney.

On cross-examination, he was not able to remember all of the conversation at that time in the office of his counsel. He had seen the deed made to the children of his brother. He admitted that since the death of his mother he claimed ownership of this land under these two deeds, and had been in possession ever since her death, and based his title on these two deeds, but at the time these deeds were originally made, it was not his idea nor the idea of his mother that he was to have the deeds at that time.

Other witnesses for the defendant, who had been employed at Mrs. Abrams' place as nurses, help, and caretakers, testified in respect of conversations, and some of these witnesses denied that Mrs. Abrams was ever alone and had conversations with her son. S. W. Abrams. One witness testified that she saw the papers which read "Warranty Deed," but on cross-examination was not able positively to identify the two deeds in controversy as the deeds that were actually exhibited to her by Mrs. Abrams at that time.

We do not set the testimony out further, but from a careful reading of all of the evidence several times, we are of the opinion that the testimony of the plaintiff was sufficient to go to the jury on the question whether these two deeds had been delivered, and that on the entire record, including all of the testimony, the plaintiff has sustained the burden of proof by sufficiently clear and

convincing evidence that the deeds were never delivered to the defendant on the general verdict of the jury. There is evidence reasonably tending to support the verdict of the jury that appears to be sufficiently clear and convincing; and under the well-established rule of this court, the cause of action will not be reversed.

The judgment in this case, however, should be modified, and the judgment was that the defendant had no right of possession in the real estate at or prior to the institution of this action, and that the defendant be evicted from said premises. This judgment, however, should be modified to the extent that the possession of this property be delivered to the plaintiff for the purposes of administration in the estate of Melissa J. Abrams, deceased.

The judgment should be further modified by an additional order that whatever right or interest may have been acquired by the plaintiff in error under said deeds should be determined in the county court of Ottawa county in the estate of Melissa J. Abrams for the reason that the district court is without jurisdiction to determine the validity of said deeds in so far as it is claimed that they may have the effect or operate to be in the nature of a will attempting to convey that particular property to the plaintiff in error. State ex rel. Morrell v. Worten, 161 Okla. 130, 17 P. (2d) 424.

For the reasons stated, the judgment is modified, and as modified is affirmed.

The Supreme Court acknowledges the aid of Attorneys Malcolm W. McKenzie, Kittie C. Sturdevant, and Calvin Jones in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McKenzie and approved by Mr. Jones and Miss Sturdevant, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.