MAHAN v. DUNKLEMAN et al.

No. 34056.   July 17, 1951.

*234 P. 2d 366.*

Drennan & Eddy, Medford, for plaintiff in error.

Elam & Crowley, Enid, and Breeden & Breeden, Medford, for defendants in error.

LUTTRELL, V.C.J. These two actions, consolidated in the lower court and in this court on appeal, were brought by the plaintiff Marjory Mahan against Maude A. Dunkleman and Ella A. Smith, both of these parties being defendants in each case. In one action plaintiff sought to cancel a deed to two tracts of land in Grant county, made by Thomas S. Paris to Maude A. Dunkleman, and in the other sought to cancel a deed to another tract in Grant county made by Thomas S. Paris to Ella A. Smith, both deeds being made in October, 1938. Plaintiff in each petition alleged that Thomas S. Paris was the brother of defendants Maude A. Dunkleman and Ella A. Smith, and the uncle of the plaintiff; that at the time the deed was made Paris was a man of advanced age who, because of mental and physical disease and weakness, was entirely without understanding; that Maude A. Dunkleman occupied a confidential and fiduciary relationship to him, and that she procured the execution of the deed sought to be canceled by reason of her dominant position due to such relationship, and by fraud and undue influence. Plaintiff alleged that she was entitled to one-third of the estate of Paris, which she sought to have decreed to her upon cancellation of the deeds. In a second cause of action she sought an accounting from the defendants for the rents and profits from the land involved in the action, from and after the death of Paris in 1943. The answer of the defendants in each case denied all the allegations in the amended petition, admitting the making of the deed, and pleaded other defenses, which we consider unnecessary to set out at length. Pending the determination of the actions Ella A. Smith died, and each case was revived in the names of her administratrix and heirs. The consolidated case was tried to the court as one of equitable cognizance, and at the conclusion of all the evidence the trial court found, among other things, that the weight of the evidence was in favor of the defendants, and generally found all the issues in favor of the defendants and against the plaintiff, and rendered judgment for defendants. Plaintiff appeals.

While plaintiff assigns a number of errors which she contends justify reversal, we think the decisive question presented is whether the findings and judgment of the trial court were clearly against the weight of the evidence. This requires a brief analysis of the evidence in the consolidated case.

From the record it appears that Thomas S. Paris was a long-time resident of Grant county, living in or near the small town of Jefferson; that he was a bachelor, and, at the time of the execution of the deeds in 1938, he was some 75 or 76 years of age. Upon his death in 1943 he was survived by his two sisters, the defendants, and his niece, the plaintiff, who were his sole and only heirs. The deeds in question were executed by him in October, 1938, and delivered to the defendant Maude A. Dunkleman without any money consideration being paid therefor by the defendants. The defendant Ella A. Smith lived in Montana, and the defendant Maude A. Dunkleman lived in Iowa, while plaintiff resided in Arkansas. Paris was a large man, weighing in the neighborhood of 250 pounds, and being 6 feet, 3 inches, tall, and at some time prior to the execution of the deeds had been involved in an automobile accident in which his legs were injured to an extent that it made it difficult for him to use them, and in later years this condition was further complicated

by arthritis. From the record it appears that Maude A. Dunkleman, his sister, had, for a long time after the accident to his legs, traveled from her home in Iowa to the home of her brother in Grant county every year for the purpose of assisting him in taking care of his business, collecting the rents and revenues from his farms, and also for the purpose of looking after a tract of land owned by her in Texas county, and one in the same county owned by Ella A. Smith. In 1940, the condition of Paris had grown worse, and Mrs. Dunkleman and her husband, who usually accompanied her on her trips to Oklahoma, took him to their home in Iowa and kept him there until shortly before his death, at which time they put him in a nursing home in the town in which they lived where he was kept until his death. At some time, either late in 1939, or early in 1940, his bank accounts, which had theretofore been carried in his own name, were by Paris changed and put in the names of Thomas S. Paris and Maude A. Dunkleman, or the survivor. It also appears that because of the condition of his right hand Paris had difficulty in writing, and Mrs. Dunkleman made out the greater portion of his checks, deposit slips, and similar documents, but that the checks were signed by him, at least, until some little time after the accounts were changed to joint accounts. It is the contention of plaintiff that by reason of the assistance rendered by Mrs. Dunkleman to Paris, and his reliance upon her during his later years, she acquired a dominating position in his life which grew stronger as he became more feeble mentally, and that she used that position to influence or induce him to make the deeds to herself and her sister. These deeds disposed of the greater portion of his property, reserving to him a life estate therein. Plaintiff contends that the execution and delivery of the deeds were not the true act of the grantor, but were the result of his mental weakness and the dominating influence of Mrs. Dunkleman.

To sustain this contention plaintiff produced a large number of witnesses, some 21 in all, while defendants likewise produced numerous witnesses to controvert the contention of plaintiff. The witnesses for plaintiff were not unanimous in their opinion as to the mental capacity of Paris at the time the deeds were executed, some asserting that he was incompetent and not able to look after his business, while others testified that he was competent so far as business transactions were concerned, and that he was able to attend to his affairs. Of this latter class were the cashiers of two banks at Medford in which he had accounts, and the owner of a milling company to whom he sold his grain. All three of these witnesses testified that so far as they could see Paris appeared to know what he was doing, and that they considered him competent to transact his business affairs. The other witnesses for plaintiff, in numerous instances, based their opinion that Paris was incompetent upon his loss of memory, his inability to express himself clearly on some occasions, and his increasing tendency to remain silent when they attempted to converse with him, while several witnesses testified that he had difficulty making change to pay for gasoline and other things purchased by him, and finally formed the habit of handing his pocketbook to the filling station attendants so that they could take out the proper amount of money. They also testified that while he persisted in driving his car, he had difficulty in doing so, and that he was a rather reckless driver. Other witnesses testified that on trips made with him he paid for gasoline, hotel rooms, and meals without much difficulty.

To attempt to set out in detail the testimony of these various witnesses for plaintiff would unduly lengthen this opinion; however, upon analyzing this testimony, it is significant that no witness testified to any act done or word spoken by Mrs. Dunkleman which indicated that she was attempting in

any way to influence Paris in his business transactions, or in the disposition of his property. One witness testified that Mrs. Dunkleman asked him to try to get Paris to fix up his business, or fix out his business, but that she did not indicate in anywise how it was to be fixed, or what was to be done with his property, leaving that entirely to Paris. There is not a scintilla of evidence in the record indicating that Mrs. Dunkleman had any hand whatever in procuring the execution of the deeds, or that she procured their execution by fraud, duress, or undue influence.

On the other hand, while numerous witnesses for the defendants testified that Paris was failing, and his memory became more and more defective as he advanced in years, all testified that in their judgment he was competent to transact his business, and that at all times they came in contact with him when he was transacting business, he seemed to know what he was doing and what he wished to do. One witness for defendant, who had known Paris for nearly 50 years, testified that he could not see anything wrong with Paris, only that he was crippled and also that he was absent-minded and forgetful. He testified that in his opinion Paris was a good business man in 1937 and 1938, and that he thought that Paris realized that he was "slipping" and made the deeds in order to dispose of his property as he wanted to.

The evidence shows that Mrs. Dunkleman's husband kept books in connection with the various farms owned by Paris, and that both he and Mrs. Dunkleman, particularly Mrs. Dunkleman, assisted Paris in taking care of his business. From all the testimony it appears that this assistance was more in the nature of clerical help, such as writing checks, checking bills, and taking care of the various details of his business, but did not extend to giving him advice, or attempting to influence him in his business transactions. Thus, the plaintiff's witness Simon, who worked in the bank at Jefferson, in which Paris carried his principal account, testified that Mrs. Dunkleman aided Paris in transacting his business, and came to the bank with him frequently. Asked specifically if she advised Paris, he answered, "Well I don't know, I couldn't say that she advised him. She did help him along". He further testified that Paris needed help, and in his individual opinion Paris was not capable of taking care of his business, and that he felt that other people would be able to persuade him, but he could not specify a single incident in which Mrs. Dunkleman had attempted to advise or persuade Paris to do anything.

The trial court questioned many of the witnesses in an endeavor to arrive at the extent of the assistance rendered to Paris by Mrs. Dunkleman, and the capability of Paris to make up his own mind, and make his own decisions in the transaction of his business, and from all the testimony produced, determined that at the time of the making of the deeds Paris was competent to understand the nature of the act and the disposition of his property, and that no persuasion, undue influence, fraud, or duress was exercised by Mrs. Dunkleman in connection with his disposition of the property. Mrs. Dunkleman was permitted to testify as a witness for Ella A. Smith, and the administratrix and heirs, and, according to her testimony, Paris brought the deed to his home and handed it to her to deliver to Ella A. Smith, which she subsequently did. The notary public on the deeds was the cashier of the bank at Jefferson, but he was dead at the time of the trial so that his testimony as to the transaction could not be had. Careful examination of the rather voluminous record, while it reveals that, because of his physical infirmities and advancing age, Paris was not as mentally alert as he had formerly been, discloses nothing to indicate that his action in making the deeds was influenced in any way by anything said or done either by Mrs.

Dunkleman or her husband, but therefrom it appears that the making and delivery of the deeds was his free and voluntary act and deed, and that at the time he was sufficiently competent mentally to know what he was doing. The finding and judgment of the trial court is not clearly against the weight of the evidence.

Plaintiff contends that Mrs. Dunkleman occupied a confidential and fiduciary relationship with Paris, as that relationship is defined in Derdyn v. Low, 94 Okla. 41, 220 P. 945, and that therefore the burden of proof was upon her and upon the defendant Smith to establish the validity of their deeds and the good faith of the transaction by clear and convincing evidence, citing Weitz v. Moulden, 109 Okla. 119, 234 P. 583, and Moore v. Moore, 167 Okla. 365, 29 P. 2d 961.

In Derdyn v. Low, supra, we said:

"A 'confidential relation' arises by reason of kinship between the parties, or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in the defendant which largely results in the substitution of the will of the defendant for that of the plaintiff in the material matters involved in the transaction."

We further said that if the plaintiff relied on undue influence as flowing from a confidential relation for the cancellation of a conveyance, plaintiff must show by sufficient proof that such confidence resulted in a sense of security on the part of the one whose confidence was imposed upon, and must prove by clear and satisfactory evidence the existence of the confidential relation in order to shift the burden to defendant.

We think the holding in the cases cited by plaintiff is correct. But the instant case is wholly lacking in any evidence tending to prove the substitution of the will of Maude A. Dunkleman for that of Paris, or that her re-lationship to him lulled him into any sense of security, or rendered him unduly susceptible to her influence. So far as the record in this case shows, she was not animated by any selfish motive in looking after her crippled brother, but was actuated solely by the desire to be of as much assistance to him as possible in view of his then condition. This evidence was not sufficient to establish a confidential relation as above defined, so as to require the defendant Maude A. Dunkleman to assume the burden of proof, and to prove by clear, cogent, and convincing evidence the validity of the gifts to herself and her sister.

Plaintiff also contends that the trial court erred in applying the doctrine in Pepper v. Truitt, 158 F. 2d 246, as the applicable rule of limitations in the case; that the trial court erred in holding that plaintiff's action was barred by limitation and laches, and that the trial court erred in permitting incompetent witnesses to testify for the defendants. This last contention is based upon the fact that the trial court permitted Maude A. Dunkleman and her husband to testify on behalf of the defendant Ella A. Smith and her heirs and administratrix, and permitted H. Gertrude Moran, the daughter and administratrix of Ella A. Smith, to testify on behalf of Mrs. Dunkleman although Mrs. Dunkleman and Mrs. Smith were defendants in each case. We are unable to agree with this contention. As we view the cases, Mrs. Dunkleman was not a necessary party in the case against Mrs. Smith, nor was Mrs. Smith a necessary party in the case against Mrs. Dunkleman. To hold that by the simple expedient of joining an unnecessary party in a case that party's testimony would be rendered inadmissible against the heirs of a deceased person, although his testimony would be competent if he were not a party to the proceeding, would permit an undue extension of the rule governing testimony as to transactions with deceased persons as laid down in 12 O.S. 1941 §384.

The trial court did not err in permitting these witnesses to testify.

As to the other errors alleged, we think that in view of the decision of the trial court upon the weight of the evidence they are not sufficient to require reversal, but fall within the rule that where the trial court reaches a proper final judgment it is not material that such judgment is predicated in part upon erroneous findings of fact or a misinterpretation of the law. Janeway v. Security Bank & Trust Co. of Ponca City, 177 Okla. 342, 58 P. 2d 892; Wineblood v. Payne, 129 Okla. 103, 263 P. 669; Kibby v. Binion, 70 Okla. 96, 172 P. 1091.

Affirmed.

ARNOLD, C. J., and GIBSON, DAVISON, HALLEY, and JOHNSON, JJ., concur.