HAMBURG et al. v. DOAK et al.

No. 35035.   Dec. 9, 1952.

*251 P. 2d 510.*

518

Savage, Gibson, Benefield & Hart, Oklahoma City, for plaintiffs in error.

C. H. Jameson, Sulphur, for defendants in error.

PER CURIAM. The parties will be designated hereinafter as they appeared in the trial court, that is, plaintiffs in error as plaintiffs and the defendants in error as defendants, or as Mary Kate Doak.

Plaintiffs instituted this action in the district court of Murray county on the 5th day of April, 1949, and subsequently filed their last amended petition on the 1st day of October, 1949. Defendants answered and filed a cross-petition on the 3rd day of November, 1949. The issues were finally joined between the parties by the plaintiffs filing their answer to the defendants' cross-petition.

The record discloses substantially the following facts: D. N. Doak was married twice; he was the father of two daughters and three sons, the plaintiffs, who were born of the first marriage, and his second marriage was to said Mary Kate Doak on or about February 27, 1947. On Friday evening, March 25, 1949, D. N. Doak was suffering from mesenteric thrombosis and was taken to the Municipal Hospital in the city of Sulphur, Oklahoma, for medical care and treatment; he was 75 years of age; and to control and alleviate his pain was given ¼ grain of morphine at 8:00 p.m., March 25, 1949; ¼ grain at 5:00 a.m., March 26th;

1/6th grain at 8:30 a.m., March 26th, and 1/4th grain at 12:05 p.m., March 26, 1949. Between 1:30 and 2 o'clock p.m., on March 26, 1949, D. N. Doak signed and acknowledged the execution of a warranty deed in general form, for the conveyance of his real property situated in Murray county and interest in certain minerals in real property situated in Stephens county, Oklahoma, to his wife, Mary Kate Doak, with a reservation in the deed of a life estate in himself, which real property was particularly described in the deed. D. N. Doak entered the hospital as stated on March 28th. He was operated on and died March 29, 1949.

Plaintiffs alleged in their amended petitions that they and Mary Kate Doak were all of the heirs of D. N. Doak, deceased; that on March 26, 1949, he owned the real property and interest in the real property described in said warranty deed, situated in Murray county and Stephens county, Oklahoma; that R. A. Jennings, Junior, on March 26, 1949, at the request of Mary Kate Doak, wife of D. N. Doak, prepared a warranty deed for the conveyance of all the real property situated in both Murray county and Stephens county, Oklahoma, with a reservation of a life estate, unto Mary Kate Doak, and said deed was executed by D. N. Doak on that day while in the hospital suffering from a condition that proved fatal on the 29th day of March, 1949; that D. N. Doak, at the time of his death, was approximately 75 years of age; that due to his advanced age and bad health, he had not been able to fully perform his usual business matters, and his wife, Mary Kate Doak, had since their marriage taken care of his business and there had arisen between them a fiduciary relationship; that because of his advanced age and physical condition he was weak mentally and physically and did not and could not know the import and effect of the execution of said warranty deed; that said deed is wholly void, and was obtained from D. N. Doak by the fraud, imposition, misrepresentations and undue influence of Mary Kate Doak; that by reason thereof he was prevented from knowing his own mind and acting in his own individual capacity; that the deed described the consideration as one dollar and other valuable consideration in hand paid; that the reasonable value of said real property was over $25,000 and no consideration in fact was paid for the deed.

It was further alleged that the deed, in effect, was void because it conveyed away the entire property holdings of D. N. Doak, and was a will not executed in the manner prescribed for executing wills and same had no force or effect; and that the deed was void for the reason the grantor did not deliver same to the grantee.

The defendants for their answer and cross-petition denied each and every allegation in plaintiffs' petition contained, except they admitted the allegations of paragraphs one and two of the lawful heirs of D. N. Doak, deceased, and that he owned the real property described in said deed and petition on March 26, 1949; and they alleged that the deed was prepared at the special instance and request of D. N. Doak, and at the time of executing and acknowledging same he was mentally competent, understood the nature and consequences of his acts, the purport and meaning thereof and executed same willingly of his own voluntary deed with full understanding of the nature and import thereof.

Defendant prayed judgment quieting the title of Mary Kate Doak in and to said real property and that plaintiffs be forever barred and enjoined from asserting or claiming any right, title or interest in or to said property.

Plaintiffs filed their reply and answer to defendants' answer and cross-petition denying each and all the allegations therein contained in paragraphs four and five.

The cause was tried to the court as one of equitable cognizance. The trial court found, among other things, that

the deed executed by D. N. Doak to the defendant Mary Kate Doak was and is a valid deed, and conveyed to the defendant Mary Kate Doak all the real property described therein, with a reservation of a life estate in D. N. Doak; and that said life estate terminated upon the death of D. N. Doak; and that the claims of plaintiffs are not sustained by the evidence and should be denied, and rendered judgment for the defendants.

It appears from the record, and in the trial of the cause plaintiffs admitted D. N. Doak was married twice; that plaintiffs were his only children and they were born of the first marriage, and on or about February 27, 1947, he and Mary Kate Doak were married; that the title to the property involved at the time of the alleged conveyance was vested in D. N. Doak; that he was possessed of his faculties, and they did not contend that D. N. Doak was mentally incompetent prior to at least a week next before he signed the deed. It appears defendants were in possession of the deed in the trial, and by stipulation of the parties, the deed, and the Delay Hospital records were introduced in evidence.

Upon the introduction of the deed in question and the hospital records, which included the medical charts and bedside notes, plaintiffs introduced the testimony of two doctors, who testified that, in their opinion, at the time D. N. Doak executed said deed on the 26th day of March, 1949, he was not of sound mind and was incapable of comprehending or understanding the nature and consequences of his acts; that they based their opinion on the fact he was of advanced age, approximately 75 years, suffering from mesenteric thrombosis and had been given several doses of morphine as stated hereinbefore. One of the doctors testified he had never seen D. N. Doak and the other that he had not seen him since about the year 1944 or 1945. They, or at least one of them, testified that the effect of morphine varies in different

patients and that elderly people as a class are not susceptible in the same degree or in the same manner. Plaintiffs, in the trial, admitted D. N. Doak was mentally competent and he possessed his faculties prior to at least a week next before he signed the deed and they did not contend otherwise.

Upon the admissions and introduction of the deed, hospital records and the testimony of the two doctors, plaintiffs rested.

Thereupon, defendants put their evidence before the court. R. A. Jennings, Junior, testified that Mary Kate Doak asked him to draw a deed covering all the property, furnished him with a general description in part, and for the rest he looked up the indexes in his office and prepared the deed; at about 1 o'clock p.m., left his office and took the deed to the room of D. N. Doak in the hospital and there he presented and read the deed, word for word, to D. N. Doak, told him that it was a deed conveying the property to Mrs. Doak. He called for a pen, signed and acknowledged he executed same as his free and voluntary act; that the only other person in the room he was sure of was Mrs. Townsley; that he had his back to the door and was facing the bed; that he did not remember whether Mrs. Doak was in the room or in the doorway or just outside. That he had prepared legal instruments for the Doaks before, both of them being in the office. Mrs. Doak made the business arrangements for the preparations of such papers, that is, Mrs. Doak brought the papers and showed what he wanted, and any papers we drew, he was sitting around until they were ready to sign and if they met his approval, all right, and if not, we would make the changes accordingly. This witness also testified that D. N. Doak signed and acknowledged the execution of the deed between 1:30 and 2 o'clock, or about that time; and that from his observations of the acts, conduct and talk of D. N. Doak at the time he read the deed to him

and he signed it, he was perfectly able to know exactly what he was doing.

The nurse, who was on duty at the time D. N. Doak executed the deed, testified he asked Mr. Jennings to read the deed and after having heard it read, signed same; that she observed his actions, conduct and conversations during the time she was with him that day and he was rational, in fairly good mental condition and understood and knew what he was signing; and at the time D. N. Doak signed and acknowledged the execution of the deed, Mrs. Doak, she thought, was in the room, standing over behind the bedside table. The attending physician testified that in his opinion he was competent and understood what he was signing; that there is a tremendous variation in the effect of morphine on different patients and the doses of morphine given D. N. Doak did not render him incompetent. That some time before noon on the 26th day of March, Mrs. Doak asked him if they could have him sign some legal documents and that it was his opinion then, and still is, that he was able to do this; that he was competent enough to do it and that he gave her that advice at approximately 10.45 a.m.

Other witnesses testified that D. N. Doak was normal and talked very normal.

In rebuttal, plaintiffs introduced in evidence the testimony of the cashier of the Farmers National Bank of Sulphur, who testified D. N. Doak had an account with the bank and that he authorized the bank to cash checks drawn by Mrs. Doak on the account; that she brought deposits to the bank for the account and checked on same.

The contention of plaintiffs that a confidential or fiduciary relation between defendant Mary Kate Doak and her husband, D. N. Doak, existed at the time he signed the deed, and that the burden was upon the grantee to show the transaction between them was in good faith; that it was fair and free from fraud, duress or undue influence, is not sustained by the evidence.

An analysis of all the testimony shows that no witness testified to any act done or word spoken by Mrs. Doak which indicated she was attempting in any way to influence her husband, D. N. Doak, in his business transactions, or in the disposition of his property. There is not a scintilla of evidence that at the time D. N. Doak executed the deed she said or did anything, or had any hand whatever in the procuring of the execution of the deed except in the forenoon on that date she made inquiry of the attending physician if they could have him sign some legal documents and she took descriptions of some of the property to the witness, R. A. Jennings, Junior, and asked him to prepare the deed. Neither is there any evidence that she procured the execution by fraud, duress, or undue influence.

On the other hand, several witnesses testified that in their judgment he was competent and capable of transacting his business, knew what he was doing and wished to do. It appears he was careful to have the deed read before executing it, as he was on previous occasions in executing other papers.

A confidential relation arises by reason of kinship, between parties or profession, business, or social relations that would reasonably lead an ordinarily prudent person in management of his business affairs to repose that degree of confidence in the defendant which largely results in the substitution of the will of the defendant for that of the plaintiff in material matters involved in the transactions.

A deed executed by a husband to his wife, apparently on its face for a good and valuable consideration, sought to be canceled on ground of fraud, undue influence, and failure of consideration, the relationship of husband and wife existing between the parties is not, within itself, sufficient to raise a presumption of fraud, undue influence, or

absence of consideration so as to cast the burden upon the grantee to show the transaction between them was in good faith.

The plaintiffs must show by sufficient proof that such confidence resulted in a sense of security on the part of the grantor whose confidence was imposed upon, and must prove by clear and satisfactory evidence the existence of the confidential relation in order to shift the burden to the defendant.

There is no evidence in this case to prove any substitution of the will of Mary Kate Doak for that of D. N. Doak or that her relationship to him lulled him into any sense of security, or rendered him unduly susceptible to her influence.

The ministration of morphine was but one of the evidentiary facts of the whole case, and is not of itself, proof or even weighty evidence of incompetency. The opinion evidence of the two doctors, one of whom had never seen D. N. Doak, and the other had not seen him since about the year 1944 or 1945, regarding its effect upon D. N. Doak, was in conflict with the testimony of the attending physician and other witnesses who saw him during the time he was in the hospital and were present at the time he signed and acknowledged the execution of the deed.

In the case of In re Mikelson's Estate, Porter v. Meyer et ux., 247 P. 2d 540, the Supreme Court of Washington, held that the ministration of narcotics was but one of the evidentiary facts of the whole case, and is not, of itself, proof or even weighty evidence of incapacity.

Plaintiffs cite the cases of Teague v. Murphy, 91 Okla. 116, 216 P. 475; Weitz v. Moulden, 109 Okla. 119, 234 P. 583; Johnston v. McCray, 122 Okla. 301, 254 P. 979; Montgomery v. Willbanks, 198 Okla. 684, 181 P. 2d 240, and Owens v. Musselman, 190 Okla. 199, 121 P. 2d 998. The facts in those cases are very different to the facts in the case at bar.

We think the rule announced in the cases of Derdyn v. Low, 94 Okla. 41, 220 P. 945; Bush v. Bush, 142 Okla. 152, 286 P. 322, and Mahan v. Dunkleman, 205 Okla. 54, 234 P. 2d 366, is correct and sustains the contentions of the defendants.

Plaintiffs contend there was no delivery of the deed in question; therefore, it is invalid and should have been set aside by the trial court under the evidence. The record does not show manual delivery of the deed by D. N. Doak to Mary Kate Doak, but does show he executed same and acknowledged the execution before a notary public in the presence of Mary Kate Doak, who was in the room, doorway or just outside of the door; that he was sick in bed and never left the hospital after executing the deed, died on the 29th day of March, 1949. On April 1, 1949, said deed was filed for record and recorded in the office of the county clerk of Stephens county, Oklahoma, and at the trial of this case the deed was in the possession of the defendants. There was no evidence of nondelivery, and, under the facts and circumstances shown by the record, the presumption is the deed was delivered to the grantee the date it bears and the burden of proving the deed in question was never, in fact, delivered, rests upon the plaintiffs.

We think the rule is correctly stated in the cases of: McKeever v. Parker, 204 Okla. 1, 226 P. 2d 425; Wasson v. Collett, 204 Okla. 360, 230 P. 2d 258; Yarbrough v. Bellamy, 197 Okla. 493, 172 P. 2d 801, and Abrams v. Neal, Adm'r, 178 Okla. 158, 61 P. 2d 1103.

We therefore hold that the judgment of the trial court is not against the weight of the evidence, and the judgment of the court below, for the reasons herein stated, is affirmed.

This court acknowledges the services of Attorneys H. M. Thacker, W. B. Garrett and T. R. Wise, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Asso-

ciation, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.