Morris B. SMITH, Plaintiff in Error,

v.

Mae Reu SMITH, E. H. Stubbeman, Administrator with the will annexed of the Estate of Charles S. Smith, Deceased, Theople Pugh, Jean Griffith and Colbert Smith, Defendants in Error.

No. 39163.

Supreme Court of Oklahoma.
Sept. 26, 1961.

V. P. Crowe, Val R. Miller, Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Purman Wilson, Purcell, Haskell Paul, Pauls Valley, for plaintiff in error.

Luttrell & Luttrell, Norman, for defendants in error.

JOHNSON, Justice.

This is an appeal from a judgment of the District Court of McClain County, Oklahoma. The plaintiff in error was plaintiff in the trial court and will be referred to as such.

Charles S. Smith, the well-to-do father of plaintiff, took up residence in McClain County about 1900. He had two children by his first wife; a son, plaintiff herein, and a daughter, Mabel, who subsequently died leaving three children, Theople, a son, Jean Griffith, a daughter, and Colbert, a son. These three grandchildren are defendants herein.

In 1936, when Charles S. Smith was approximately seventy-three years of age, his wife died. Charles continued to live on the home place in McClain County. On March 15, 1951, Charles married the defendant Mae Reu Smith. He was then eighty-eight, and his new wife was sixty. At the time of the marriage she was the widow of a man by the name of Bryce. She had inherited from him a home at Oklahoma City. Shortly after the marriage, Smith and his wife moved to her home in Oklahoma City where they continued to live until he died on November 10, 1955, more than four years after his second marriage.

During the period of this second marriage on October 13, 1953, Charles deeded in fee to his wife eighty acres of land described as the S½ of NW¼, Sec. 2, T.9N, R.4W, containing 80 acres in McClain County, Oklahoma. On April 17, 1954, Charles deeded to his wife an undivided one-half interest in the minerals underlying the following lands in McClain County, Oklahoma, to-wit: SW¼ of NE¼ and S½ of NW¼ and Lots 1, 2, 3 and 4 of Section 1, T.9N, R.4W.

It is next alleged that deceased was caused to purchase from his stepdaughter Lots 10 and 11 in Block 8, Neas Addition and take the title in joint tenancy with defendant.

Charles died testate, but by the terms of his will his property was bequeathed and devised in the same proportion as under the statutes of descent and distribution. One-third was given to his widow and the remainder to his child and grandchildren.

In the administration of the estate, the property given to his widow prior to his death was not included.

This suit was brought to cancel and set aside the conveyances made to his widow prior to his death because of undue influence, fraud and feebleness. An accounting was also sought.

But one proposition is advanced by plaintiff. He contends that marriage creates a confidential relation, and that when a person is aged and infirm and a conveyance is made without consideration, the burden shifts to the donee to show absolute good faith and the absence of undue influence.

There are certain facts which are beyond dispute in this record.

1. The deceased was a hard-headed and successful businessman who left a gross estate of $219,616.64.

2. Every witness in this large record testifies that the widow took excellent care of the deceased all during his second marriage.

3. It is conceded that all of the conveyances involved herein were without monetary consideration.

4. The value of the property involved here is but a small percentage of the entire estate of the deceased.

5. The grandchildren of the deceased, who inherited one-third of his estate, are not seeking to cancel the deeds involved here.

There is but one proposition submitted by the plaintiff. It is urged that the burden of proof was upon the defendant "to make a full and complete disclosure showing absolute good faith and that no fraud or undue influence was practiced in the transactions between defendant and her deceased husband, which she wholly failed to do."

This proposition is bottomed upon the rule laid down in the syllabus of Owens v. Musselman, 190 Okl. 199, 121 P.2d 998, 1000. There are distinguishing factors in that case which make it inapplicable. The relation of husband and wife was not involved. Further the opinion says:

"We find from this record that the plaintiffs showed that the Musselmans occupied a confidential relationship to the decedent; that the transaction complained of was between the parties to the relationship; that an inadequate consideration was paid; that this showing made a prima facie case in their behalf and cast upon said defendants the duty to go forward with the testimony and make a full disclosure; * * *."

The plaintiff had established by the evidence the existence of a confidential relation. This the plaintiff in the instant case failed to do. In defining what constitutes a "confidential relation," this court has said in the second paragraph of the syllabus in Hamburg v. Doak, 207 Okl. 517, 251 P.2d 510, 511:

"A confidential relation arises by reason of kinship between parties or profession, business or social relations that would reasonably lead an ordinary prudent person in management of his business affairs to repose that degree of confidence in the defendant, largely resulting in substitution of the will of the defendant for that of the plaintiff in material matters involved in the transaction."

There is no evidence in this record showing any "substitution of the will of the defendant" for that of the deceased. The evidence, on the contrary, shows a man in full possession of his faculties with broad business experience making deeds to a small portion of his estate to a wife who had exhibited great solicitude for his welfare. Nowhere is there evidence of persuasion, undue influence or lack of mental capacity on his part.

This court said in the opinion in Mahan v. Dunkleman, 205 Okl. 54, 234 P.2d 366, 370:

"We further said that if the plaintiff relied on undue influence as flowing from a confidential relation for the cancellation of a conveyance plaintiff must show by sufficient proof that such

confidence resulted in a sense of security on the part of the one whose confidence was imposed upon, and must prove by clear and satisfactory evidence the existence of the confidential relation in order to shift the burden to defendant."

The evidence here is comparable to that which is described by the court in Schatz v. Wintersteen, 201 Okl. 660, 208 P.2d 1136, 1139, where the court says in the body of the opinion:

"* * * There is no evidence to the effect that he consulted with or sought advice from the defendant in the management and conduct of his business, or that the defendant in any manner attempted to or did exert influence over him. There is no evidence tending to show that defendant in any manner suggested or advised the execution and recording of the deed or that he had any knowledge of the intention of deceased to execute the deeds until after they were executed. * * *"

In the case of Hamburg v. Doak, supra, the facts were much stronger than in the case at bar. The deceased was seventy-five years of age; had been under the influence of morphine for at least two days; executed the deed to his wife on the second day upon which morphine was given; entered the hospital two days later and died on the next day. The court said in the opinion:

"An analysis of all the testimony shows that no witness testified to any act done or word spoken by Mrs. Doak which indicated she was attempting in any way to influence her husband, D. N. Doak, in his business transactions, or in the disposition of his property. There is not a scintilla of evidence that at the time D. N. Doak executed the deed she said or did anything, or had any hand whatever in the procuring of the execution of the deed except in the forenoon on that date she made inquiry of the attending physician if they could have him sign some legal documents and she took descriptions of some of the property to the witness, R. A. Jennings, Junior, and asked him to prepare the deed. Neither is there any evidence that she procured the execution by fraud, duress, or undue influence."

Further on the court says:

"A confidential relation arises by reason of kinship, between parties or profession, business, or social relations that would reasonably lead an ordinary prudent person in management of his business affairs to repose that degree of confidence in the defendant which largely results in the substitution of the will of the defendant for that of the plaintiff in material matters involved in the transactions.

"A deed executed by a husband to his wife, apparently on its face for a good and valuable consideration, sought to be canceled on ground of fraud, undue influence, and failure of consideration, the relationship of husband and wife existing between the parties is not, within itself, sufficient to raise a presumption of fraud, undue influence, or absence of consideration so as to cast the burden upon the grantee to show the transaction between them was in good faith."

The court concludes:

"There is no evidence in this case to prove any substitution of the will of Mary Kate Doak for that of D. N. Doak or that her relationship to him lulled him into any sense of security, or rendered him unduly susceptible to her influence."

We therefore hold that where a gift is made to a wife by one in possession of his faculties, that in order to apply the rule requiring a full disclosure under the authorities above cited, it must be first proved that a confidential relation exists, and for this purpose the relation of husband and wife alone is not sufficient to prove the character of confidential relation necessary

to invoke the rule shifting the burden of proof to the defendant in a suit of this character. In addition thereto there must be proof of the substitution of the will, the lulling into a sense of security, the domination of the grantor by defendant in business decisions or other comparable elements as set forth in the authorities quoted.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JACKSON and BERRY, JJ., concur.

WELCH, HALLEY and IRWIN, JJ., concur in result